In the Matter of the Petition of VERONICA M. KOHLER and Others, as Executors and Trustees under the Last Will and Testament of CHARLES KOHLER, Deceased, Appellants, for the Construction of the Will of Said Testator.

In the Matter of the Judicial Settlement of the Account of VERONICA M. KOHLER and Others, as Trustees under the Last Will and Testament of CHARLES KOHLER, Deceased, Appellants.

VERONICA M. KOHLER, Individually, and Others, Appellants; NILS K. FLORMAN, an Infant, Respondent.

First Department, July 9, 1920.

Wills — trusts — trust to pay certain sum from income and profits — disposition of surplus income — use of corpus of estate where income insufficient — trust to pay annuity — irreconcilable clauses in will — posterior clause prevails — will examined and construed not to contain irreconcilable clauses —" annuity " defined — right to continue business of testator not limited to administration purposes — amount of fund necessary to meet requirements of trust which trustees are directed to set aside not limited by present productive value of invested property — accumulation of profits to meet deferred payment to legatee — right of trustees to accumulate profits of business continued by them — assets of estate invested in business subject to hazards thereof — suspension of power of alienation — absolute power of sale vested in trustee — distribution of residuary estate.

Where a will directs that a certain sum is to be paid annually out of the income and profits of property devised in trust, if there is a surplus of income from the capital sum, over and above the annual payment, it cannot be accumulated to make up a deficiency in any subsequent year, but it must be paid over to the presumptive taker of the next eventual estate.

Under such a trust no portion of the principal of the fund or of the corpus of the estate can be applied to make up the deficiency, and if through the shrinkage of income, loss of the capital sum, or for other reasons, the income from the fund is diminished, or fails, the beneficiary must suffer the loss.

On the other hand, if a specified sum is directed to be paid periodically, and not out of income and profits, it must be paid in all events. However, being a periodical payment, resort would first be had to income, but if that is insufficient, then to the capital or corpus of the estate, and to this end property would have to be sold to make good the deficiency.

Where two clauses in a will are irreconcilable, so that they cannot possibly stand together, the one which is posterior in position shall be considered as indicating a subsequent intention and prevail, unless the general scope of the will leads to a contrary conclusion.

But it is only when the real intent of the testator cannot be gathered from the general scope or otherwise, and when the two provisions are wholly irreconcilable and cannot possibly stand together, that resort is had to this rule.

Will examined, and *held*, that the several clauses in reference to the establishment of a trust fund were not irreconcilable, but that alternative provisions were made for the payment of the annuities established, to be operative under different conditions; that under one clause it was provided that if the trustees decided not to continue the business and investments of the testator, they were to establish separate funds to provide the means of making payments to the testator's wife and daughters of the annuities provided by the will; but in the alternative, if the trustees decided to continue the business and investments of the testator, the annuities payable to the testator's wife and daughters were to be a charge upon and paid from the business; and that inasmuch as the trustees exercising the discretion vested in them, decided to carry on the business, the provision of the latter clauses became operative.

An annuity is a stated sum per annum, payable annually unless otherwise directed, and the direction in the will that a certain sum shall be paid annually by trustees to certain persons, without specifying that it shall be paid from the income of the trust estate, provides for the payment of an annuity.

A provision in a will authorizing and empowering trustees to " continue any business now owned or carried on by me  *  *  *  during such period of time as in their discretion they consider it to be of benefit to my estate " does not limit the trustees to carrying on the business for administration purposes.

Under a will providing for the payment of annuities to the testator's wife and daughters and giving the trustees discretion to continue the business of the testator and providing that so long as the shares of the testator's wife and daughters remain invested in the business, the trustees shall pay to them annually a stated sum regardless of the profits of the business, which is construed to require the setting up of separate trusts for each annuitant, which was attempted to be done by means of bookkeeping entries apportioning the valuation of the physical estate, the trustees were justified in apportioning to each trust fund a sufficient amount to produce, at the rate of three and one-half per cent, an amount sufficient to pay the annuities, and they were not limited in making the apportionment to the present productive value of the shares or portions invested in the business.

Where trustees are directed to pay a certain sum to beneficiaries on reaching the age of twenty-five, thirty-five and forty-five years, such payment must be made out of the capital fund, and the trustees cannot set aside

for that purpose sufficient money only, which, with accumulations, will meet the required payment, for to do so would be a violation of section 16 of the Personal Property Law and section 61 of the Real Property Law, prohibiting accumulations of income except during the minority of the beneficiary for the purpose of paying the same over to the beneficiary at a time subsequent to arriving at majority.

Where a testator authorizes the continuance of his business, that portion of the assets of the estate which is invested therein is subjected to the hazards of the business obligations to be incurred, which of necessity have to be met from the proceeds of the business.

The accumulation of profits by trustees who are authorized to continue the business of the testator is not unlawful under section 63 of the Real Property Law, which by section 11 of the Personal Property Law is made applicable to estates in personal property, where the trustees are to carry on the business for such time as they deem for the best interests of the estate, with full power of sale, and the business is vested in the trustees without limitation over to any person, and there is no direction for an accumulation of profits, and the annuities are not to be paid out of profits, and the testator contemplated the sale of the business during the lifetime of the annuitants.

The power of alienation of the assets of the testator's business is not suspended where the trustee has an absolute power of sale, the exercise of which would not contravene, but on the contrary be in furtherance of the terms of the trust.

Where a will provides for the payment of stated amounts out of the income of trust funds, if there is a deficiency of income, the payment to the beneficiary must be reduced, but if there is a surplus, it is distributable to the presumptive takers of the next eventual estate.

The trustees, having exercised their discretion and continued the business, any portion of the residuary estate that was not invested in the business at the time of the testator's death should be distributed to the residuary legatees.

SMITH and MERRELL, JJ., dissent, with opinions.

SEPARATE APPEALS by the petitioners, Veronica M. Kohler and others, as executors and trustees, etc., and by Veronica M. Kohler, individually, and by others, from the whole and parts of a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 21st day of November, 1918, confirming a report of a referee in proceedings for the construction of a will and settling the account of the trustees.

*Addison A. Van Tine,* for the appellant Veronica M. Kohler, individually.

*Nathan L. Miller* of counsel [*John B. Stanchfield* with him on the brief], *Stanchfield & Levy*, attorneys, for the appellant Olga V. Florman.

*Timothy Murray*, special guardian, for the appellants Vera M. Kohler and Rita M. Kohler, infants.

*James A. O'Gorman* of counsel [*O'Gorman, Battle & Vandiver*, attorneys], for the trustees, appellants.

*Charles H. Tuttle* of counsel [*Daniel J. Mooney* with him of the brief], as special guardian of Nils K. Florman, an infant, respondent.

PAGE, J.:

After a careful consideration of the will of Charles Kohler I find myself unable to accept the constructions placed upon it in the opinions of my brother MERRELL, the surrogate or the distinguished referee. In each, in my opinion, a result is reached which is contrary to and in some respects destructive of the purposes and intentions of the testator. In the opinion of Mr. Justice MERRELL the trustees are given a reasonable time to close up the business and marshal the assets, establish the separate trust funds and distribute the remainder of the residuary estate to the daughters. This construction, in my opinion, ignores the provisions contained in the 12th, 13th and 14th clauses of the will and gives effect to the 8th clause alone. The referee gives effect to the 12th, 13th and 14th clauses of the will and postpones the setting up of the separate trust until the sale of the business, but he treats the profits of the business as the income of the trust estate, out of which the annual payments are to be made, and finds that the accumulated surplus of such profits must be distributed to the persons presumptively entitled to the next eventual estate by virtue of section 63 of the Real Property Law. Under this construction the daughter Olga would be paid at this time the sum of $200,000, and her infant child the sum of $200,000, and his daughters Vera and Rita $100,000 each, and if the business should continue to be prosperous, and a surplus of profits over and above the amount necessary to pay the annual charges, there would of necessity be a like

distribution. This contravenes the provision of the 14th clause of the will that " The said yearly payments of Twenty-five thousand dollars ($25,000) to each of my daughters as aforesaid and Twenty-five thousand dollars ($25,000) to my wife are to be made in lieu of profits and interest and irrespective of what the profits of the business are, that is to say, in the event of the profits of the business in any year being in excess of the aggregate of said yearly payments to my wife and daughters, such payments shall not be increased."

The learned surrogate held that it was the duty of the trustees now to set up the various trusts; that as there had been no definite separation of the trust funds it would not be correct to regard any accumulation of income in excess of the requirements of paragraph 8, accumulations on a particular trust fund; therefore, until such trusts are definitely constituted the excess income remains a portion of the residuary estate, which when the trusts are permanently constituted, is to be distributed to the daughters under the 18th clause of the will; but that after the trusts are constituted thereafter all surplus each year should be paid over to the holder of the next eventual estate. (See 96 Misc. Rep. 433.)

In my opinion, both the surrogate and the referee have read into the provisions of the 8th clause of the will the words, " out of the income and profits thereof," thus making the clause read: " To set aside out of my said residuary estate a share or portion thereof sufficient for the purpose, and to hold the same in trust for my daughter, * * * investing and reinvesting the same from time to time and *out of the income and profits thereof* paying over the sum of Twenty-five thousand dollars ($25,000) per annum." There is a radical difference between a provision that a certain sum is to be paid annually or at a specified time out of the estate, and a provision that it is to be paid out of the income and profits of a capital sum that is to be set apart. In the latter case if there is a surplus of income from the capital sum, over and above the annual payment, it cannot be accumulated to make up a deficiency in any subsequent year, but it must be paid over to the presumptive taker of the next eventual estate. (*Spencer* v. *Spencer*, 38 App. Div. 403, 410.) As payment is to be made out of income no portion of the principal of the fund nor

of the corpus of the estate could be applied to make up the deficiency. (*Delaney* v. *Van Aulen*, 84 N. Y. 16.) If through the shrinkage of income, loss of the capital sum, or for other reasons the income from the fund is diminished, or fails, the life beneficiary must suffer the loss.

On the other hand, if a specified sum is directed to be paid periodically and not out of income and profits, it must be paid in all events. Of course being a periodical payment, resort would first be had to income, but if that is insufficient, then to the capital or corpus of the estate, and to this end property would have to be sold to make good the deficiency. (*Matter of Haviland*, 49 Hun, 301; affd., 124 N. Y. 640; *Rowe* v. *Lansing*, 53 Hun, 210; *Pierrepont* v. *Edwards*, 25 N. Y. 128, 131.) In my opinion, the draftsman of the will under consideration had clearly in mind this distinction. It seems to me the diversity of views and the different constructions put upon this will arise from the fact that it has been construed in the light of present facts, rather than from the viewpoint of the testator, and with an eye to the provisions of law for the purpose of making the facts fit the law, instead of first attempting to ascertain from the language used the intent of the testator, considering the condition of his property, the circumstances of his family and the objects he sought to accomplish, and then determining whether such provisions are valid or otherwise. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 92.) In attempting to thus construe the will I have arrived at a conclusion that differs from those heretofore given.

By the will of Charles Kohler his entire residuary estate was devised and bequeathed to his executors as trustees. The entire residuary estate turned over to them by themselves as executors, pursuant to the decree of the surrogate, became the corpus of the trust. This amounted to $4,300,312.72 in personalty and also as a part of the residuary estate an unproductive piece of real estate estimated to be worth $110,000. The beneficiaries of the trust were his wife and children, three daughters; the natural objects of his bounty. The main purpose of the trust was to secure to each an income of $25,000 a year, during their lives, with a further provision for the daughters that payments of $100,000 should be made

First Department, July, 1920. [Vol. 193.

to each of them on arriving at the age of twenty-five, thirty-five and forty-five years, respectively. His first thought was the establishment of four separate trust funds, sufficient for the purpose. He, therefore, made provision for such trusts in the 8th clause of his will, setting forth in separate subdivisions a provision for each daughter in identical language, to the following effect: He directed his trustees to set aside out of his residuary estate a share or portion thereof sufficient for the purpose, and to hold the same in trust for his daughters, investing and reinvesting the same from time to time and paying over the sum of $25,000 per annum, payable semi-annually during her natural life, and in addition thereto when she arrives at the age of twenty-five, to pay over to her the sum of $100,000; when she arrives at the age of thirty-five a further sum of $100,000; and when she arrives at the age of forty-five, a further sum of $100,000; and upon her death to pay over the balance remaining unpaid of the share or portion of the said residuary estate so set aside for her benefit, as aforesaid, to such of her issue as shall be living at her death, share and share alike. Should any of her issue die before her, leaving issue at her death, then such issue shall take in equal shares the share the parent would have received had he or she survived her death. Should his daughter leave no issue surviving her, then, in that event, the said share or portion provided for her shall pass into and become a part of the residuary estate. By the 4th subdivision of the 8th clause of the will the trustees were to set aside out of his residuary estate a share or portion thereof sufficient for the purpose, and hold the same for his wife, investing and reinvesting the same from time to time and paying over the sum of $25,000 per annum payable semi-annually during her natural life. In the 9th clause he directed that the bequest of the above life interest in the remainder of the residue of his estate given to his wife shall be in lieu of dower. In the 10th clause he appointed his wife guardian of his daughters. In the 11th clause he gave to his trustees, their survivors and successors in trust, as full power and authority over his personal and real estate as he himself then possessed, to sell the same for cash or on mortgage, at public or private sale. He then makes provision for the holding of his real estate until in their

discretion a sale should be made, and further a provision in regard to the real estate which was entirely inapplicable to the real estate that he then owned, *i. e.*, meanwhile to receive and collect the rents, repair and insure the buildings and in case of destruction by fire, or otherwise, to rebuild, remodel or repair any buildings on said real estate, and to receive and collect, invest and reinvest the said personal property, and to receive and collect the interests and profits as fully and freely as he might do in his lifetime, and to pay the same over as thereinbefore directed. The testator up to this point in his will has outlined his plan and expressed his purpose for his estate as it might be at the time of his death and in a manner consonant with the usual practice, and without special reference to the then form of his investments. He contemplated the possibility that at the time of his death he might have productive holdings of real estate; therefore, elaborate provision is made for its care and maintenance and the receipt and collection of the rents, issues and profits. He did not in this scheme contemplate the continuance of his business by his trustees, and the plan so far outlined by him is not only inappropriate to, but as has been demonstrated by those who have sought to so apply it, inapplicable to that contingency. The testator, in my opinion, then undertook to provide an alternative plan. In the 12th clause he authorized his trustees at their discretion to retain the investments of his property in the form in which they might be at the time of his death, and he also authorized and empowered his trustees to continue the business then owned and carried on by him in the city of New York or elsewhere during such period of time as in their discretion they considered it to be of benefit to his estate. Should the continuing of the investments or of the business prove to be unprofitable to his estate he directed that upon no account should they be held liable for any loss or damage his estate might sustain by reason of such continuance. In the 13th clause he provided that in continuing the business as therein directed if the shares or portions set aside for his daughters as hereinbefore directed are already invested in such business, then it was his desire that they so remain until the business was sold by the trustees, and he so directed. This clause evidently contemplated the possibility that at the

time of his death there might be a sufficient residuary estate invested otherwise than in his business, out of which the trusts specified in the 8th clause might be constituted. But if that should not be the case then he did not wish the investment in his business to be disturbed to constitute such trust, but to remain in the business. In that event he provided in the 14th and 15th clauses of the will a plan for accomplishing his purpose which was an alternative or substitution for that provided in the 8th clause. That is as follows:

" *Fourteenth.* And I hereby direct that while such business is being carried on by my Trustees as aforesaid, and while the shares or portions set aside for my daughters remain in said business as aforesaid, the sum of Twenty-five thousand dollars ($25,000) in half-yearly payments shall be yearly paid to each of my daughters out of said business, the sum of Twenty-five thousand dollars ($25,000) in half-yearly payments shall be yearly paid to my wife also out of said business. The said yearly payments of Twenty-five thousand dollars ($25,000) to each of my daughters as aforesaid and Twenty-five thousand dollars ($25,000) to my wife are to be made in lieu of profits and interest and irrespective of what the profits of the business are, that is to say, in the event of the profits of the business in any year being in excess of the aggregate of said yearly payments to my wife and daughters, such payments shall not be increased; and on the other hand, should the profits of the business be less than the aggregate of said yearly payments to my wife and daughters, such payments shall not be decreased — they shall be maintained, and I so direct, and in the event of there being a deficit, that is to say, if the profits of the business do not equal the aggregate of the payments to be made to my wife and daughters as aforesaid, then, in that event, such deficit shall be made good out of the residue of my estate, which for the time being is invested in such business.

. " *Fifteenth.* When in the judgment and discretion of my Trustees, they think it advisable that the said business should be sold, then, in that event, I hereby restrict the investment of the proceeds received from the sale of said business or from the sale or conversion of any of my property, real or personal, to investments in which by law Trustees may invest. There-

afterwards the income paid half-yearly to my wife and daughters as aforesaid, shall of course be limited to the net income arising from such investments, and the said yearly payments of Twenty-five thousand dollars ($25,000) to my wife and daughters respectively as aforesaid shall thereupon cease."

The business was to be carried on by the trustees, but was charged with the payment of the annuities in favor of his wife and daughters, but it was not to be carried on solely for that purpose, nor was the time when it should be sold measured by the ability to produce sufficient to pay the annuities. It was to be continued so long as in the discretion of the trustees they considered it to be of benefit to the estate.

The estate to which reference is made was the residuary estate which was in the hands of the trustees, all of which the testator designed to be distributed to his three daughters equally, charged with the annuity for the wife. It was clearly provided that after the erection of the trusts the residue should be divided between his children, share and share alike. Identical provisions were made for each child, for annual and periodic payments.

As each child and the wife were to receive the sum of $25,000 per annum, not out of the income or profits of any particular portion of the business segregated and set apart for them, nor necessarily from the profits of the business, but a fixed sum " in lieu of profits and interest and irrespective of what the profits of the business are," no purpose would be served in setting apart and labeling that portion of the whole with the name of any particular beneficiary. Inasmuch as the whole was held by the trustee for the benefit of all equally, charged only with the payment of the annuities, such, to my mind, was the intention of the testator so long as the investment was to continue in the business. When the business was sold he does not revert to the plan outlined in the 8th clause of the will in its entirety. There is no fixed sum to be paid annually in all events as provided in the 8th clause, but the sums are to be paid out of and are limited to the income from the separate trust funds. At that time there will be no difficulty in fixing a portion sufficient for the

First Department, July, 1920.    [Vol. 193.

purpose of producing an income of $25,000 annually, with reasonable certainty of its continuance, and to paying from the capital the $100,000 payments when they come due When this is done the balance of the residuary estate could be distributed to the children, share and share alike, as also would be distributed the share or portion held for the wife upon her death and the share or portion of any of the daughters who die without issue. The share of the child dying leaving issue would go to such issue *per stirpes*.

By this interpretation of the will his main purpose is accomplished, his wife and daughters are assured of an annual income in the amount he desired them to have, and in all things there is an equality of distribution among his daughters, and the issue of a daughter, if any, will take only their parent's share upon the death of the daughter. In this manner force and effect are given to each clause of the will, and in my opinion the intention of the testator is given effect.

The question then arises, does this construction run counter to any provision of the law? In my opinion it does not. *First.* In the construction of the will if there is a conflict between the provisions of the 8th and those of the 14th and 15th clauses, which should be given preference?

The surrogate and Mr. Justice MERRELL give effect to the 8th clause and eliminate the 14th and 15th clauses, while in the construction above set forth precedence is given to the latter clauses. While in my opinion there is not so great a dissimilarity in these provisions that the alternative is presented of adopting one and wholly excluding the other, yet if these clauses were irreconcilable and one or the other would have to be excluded, effect would have to be given to the 14th and 15th clauses in preference to the 8th clause. As was said by Judge RAPALLO: " The testator has declared both intents in language plain and unambiguous in itself, and I see no solution of the difficulty except by the application of the rule that when two clauses in a will are irreconcilable, so that they cannot possibly stand together, the one which is posterior in position shall be considered as indicating a subsequent intention, and prevail, unless the general scope of the will leads to a contrary conclusion." (*Van Nostrand* v. *Moore*, 52 N. Y. 12, 20.) Therefore, if the clauses of the will are

irreconcilable it is the 8th clause that must be eliminated and not the subsequent 14th and 15th clauses. But in my opinion neither clause need be eliminated. It is only when the real intent of the testator cannot be gathered from the general scope of the will or otherwise, and when the two provisions are wholly irreconcilable and cannot possibly stand together, that resort is had to this rule. (*Adams* v. *Massey,* 184 N. Y. 62, 69.) As I have already stated, the 8th clause was intended to apply to one condition that might arise, and the others to another condition. If the trustees decided not to continue the business and investments of the testator, it was his intention to secure the payment of the sums annually and periodically to the wife and daughters, and separate funds were to be established to provide the means of making such payments. If, however, the trustees decided to carry on the business these annuities were to be a charge upon and paid from the business. The trustees, exercising the discretion vested in them, decided to carry on the business. Therefore, the provision of clauses 14 and 15 became operative. There was no change in the result the testator wished to accomplish of providing definite amounts to be paid at stated periods to the subjects of his bounty. In the one case, the payment was to be made from a capital fund created out of the residuary estate and separately set apart and invested in various securities for each annuitant, while in the latter all were to be paid out of the estate invested in the business, not from a separate and distinct part appropriated to each, but from the whole thereof. In case of a deficiency of income sufficient to pay the annual charge, in the first, resort could not be had to the share set apart for another, nor could it be supplied from the remaining portion of the residuary estate, for under the terms of the will, that remainder would have been distributed. Resort would of necessity have to be made to a possible accumulation, or to the capital of the particular fund, while in the second, it is expressly provided that if the profits of the business should be less than the aggregate of the yearly payments, the deficit shall be made good out of the residue of his estate which was for the time being invested in such business. I have used the word " annuity " in referring to the annual and periodical payments to be made under both provisions of

the will, for as I have heretofore stated, in my opinion the provisions are for trusts to pay annuities and not to pay out of income. The learned surrogate held that the payments authorized by the 8th clause of the will were trusts for the payment out of income and not annuities, his principal argument being that at common law a trust could not be authorized for the payment of annuities because, if there was a deficiency the trustee would be required to encroach on the principal, which the trustee of an express trust may not do, and that the use of the common-law term " annuities " in our statutes to denote annual payments derived from trust funds is incorrect and confusing. It is a sufficient reply to state that the common-law terms " annuity " and " rent charge," have long since lost their primary meanings and nice distinction. An annuity no longer means a yearly payment of a certain sum of money granted to another in fee or for life or for years and chargeable only on the person of the grantor. Surrogate BRADFORD more than sixty years ago gave the definitions of and the distinction between annuities and an annual payment out of profits which has been cited with approval by the courts of this and many other States, in *Booth* v. *Ammerman* (4 Bradf. 129, 133): " An annuity is a stated sum per annum, payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount varying according to the income or profits, though a certain fund may be provided, out of which it is to be payable. * * * The income or interest of a certain fund is not an annuity, but simply profits of certain property, to be earned, which may vary more or less." And prior to the enactment of the Real Property Law of 1896 which the learned surrogate says caused the confusion in our law of trusts in this regard, the Court of Appeals held that express trusts for the payment of annuities could be established under the Revised Statutes (1 R. S. 728, § 55, subd. 3, as amd. by Laws of 1830, chap. 320, § 10), whether the corpus be real or personal property. (*Cochrane* v. *Schell*, 140 N. Y. 516. See Gen. Laws, chap. 46 [Laws of 1896, chap. 547], § 76; Consol. Laws, chap. 50 [Laws of 1909, chap. 52], § 96.) In the case which the surrogate cites as applicable to and governing in the decision of this case (*Spencer* v. *Spencer*, 38 App. Div. 403), the will provided

explicitly that the executors should set apart a certain portion of the testator's real estate, in their judgment sufficient to yield a net income of $25,000 per annum and *out of the income* pay $25,000 per annum to his widow for life. The italicised words show that this was a trust to pay out of income, and not an annuity, which distinguishes it from the instant case. There can be no question but that the provision for the payment out of the business provides for the payment of an annuity, and for the reason above given, the annual payments to be made under the 8th clause were also annuities. If this be so the only change was that in one contingency a separate fund was to be established for each, out of which the annuities were to be paid, and in the other they were to be paid out of the business as a whole. I cannot find any statement that would justify the inference of Mr. Justice MERRELL that it was intended that the business was to be carried on by the trustees, under the provisions of sections 14 and 15, only until the estate could be administered. On the contrary, by the 12th clause of the will the trustees are expressly authorized and empowered " to continue any business now owned and carried on by me * * * during such period of time as in their discretion they consider it to be of benefit to my estate." This is more than a power to continue the business for administration purposes. If that had been the intention the business should have been closed or sold during the period in which the estate was being administered and by the executors whose duty it was to administer the estate and turn over the residue to the trustees. The will gives the trustees power to carry on the business for an indefinite time within their discretion, limited only by the duration of the trust. The will has been construed to require the setting up of the separate trust for each daughter and upon the surrogate's suggestion the trustees have attempted to comply with that requirement. They have by bookkeeping entries apportioned the valuation of the physical residuary estate as it was received into four parts and entered upon their books the amount thereof in cash, as follows: The widow's share or portion is stated at $881,831.24, and each daughter's share at $1,182,028.89. The trustees asserted that the aforesaid sums were necessary in order to produce an income

First Department, July, 1920. [Vol. 193.

sufficient, at three and one-half per cent, to pay the annuities of $25,000 per year and the periodic payments of $100,000. This is done upon the theory that when the business is sold, the share or portion of each is to be invested in such investments as trustees are permitted by law to make. Such investments are eminently safe, but as a rule produce a small percentage of income, and the trustees are required to set up a sum which in their judgment would be sufficient to take care of the annual payments of the sums that the testator considered a proper income for the support of his wife and daughters during their lives, and periodic payments from capital of $900,000 to the daughters. If they had under the 8th clause of the will immediately set aside these sums for investment in such securities as the law allows, the court would not have deemed that an abuse of their discretion. A large degree of latitude must, of necessity, be allowed them. They were to set aside a sum sufficient at all hazards that would produce a given result. If they have erred on the side of safety and experience proves that a larger income will result than necessary, the law will take care of the surplus and direct its distribution. Criticism is made that the apportionment should have been made on the present productive value of the shares or portions now invested in the business, and the profits of the business treated as the income on the shares. That, however, is expressly prohibited by the 14th clause of the will.

Stress is laid upon the expressions " If the shares or portions set aside for my daughters as hereinbefore directed are already invested in such business, then it is my desire that they so remain until the business is sold," in the 13th clause, and " while the shares or portions set aside for my daughters remain in said business," in the 14th clause. From this it is argued, first, it was the intention of the testator that the first duty of the trustees was to segregate from the residuary estate the share or portion for each daughter and then apply the income derived from that share to the annuitant. This construction admittedly is impossible if effect is to be given to the testator's plan that the investment in the business should be continued as such and the trustees were to carry on the business and sell the same at public or private sale. If the profits of the business were to be distributed to the beneficiaries

as income on their share, a much smaller amount of capital would be required to set up the trusts than would be the case if the amount was measured by that sufficient to produce the necessary income from trustees' investments as prescribed by law. There would then be a " balance or residuary estate remaining " which under the 18th clause of the will would have to be distributed, and as all of the testator's businesses have been incorporated such distribution would have to be made in stock certificates, which would be held absolutely by the residuary legatees, and could be sold by them to third parties. This might lead to endless complication and be destructive of the testator's plan to have the business continued by the trustees and the payments made out of the business, and not from a segregated part thereof. If it was their duty to have done it then it was their duty to do it at the time they did. A mere failure to perform a duty does not absolve the trustees from the obligation imposed. It is suggested because such " shares or portions " were not ascertained and established, that it cannot be said that they were invested in the business. But the whole, out of which the parts had to be taken, is so invested, and the whole includes all the parts or portions thereof. It may be said that the actual physical appropriation of specific shares of stock might not have been necessary, and with that contention I agree. The only alternative, as it seems to me, was that adopted by the trustees of making a separation by means of bookkeeping entries. It may well be that the business when sold will produce a larger corpus for the trust than the total estimated value of these shares or portions, when the separate investment of the proceeds of the sale is made in the securities in which trustees may legally invest and the trusts are created. If that be the case the surplus will be distributable. In my opinion the method adopted by the trustees was the correct method of dealing with the situation and the one most likely to enable them to carry out each and every requirement of the will.

Testimony was given upon the trial tending to show that an investment of $199,114.79, invested at three and one-half per cent would by the accumulations of income furnish a sum sufficient to pay to the daughter Olga $100,000 in each

of the three ten-year periods, and that a less sum would be sufficient to provide for payments to the other daughters, Those who argue from these facts that the trustees have allotted a larger sum than is necessary for the purpose have overlooked the fact that these payments must be made out of capital, for accumulations of income except during the minority of the beneficiary for the purpose of paying the same over to the beneficiary at a time subsequent to arriving at majority would be void.    (Pers. Prop. Law, § 16, as amd. by Laws of 1915, chap. 670; Real Prop. Law, § 61, as amd. by Laws of 1915, chap. 670.)    This brings up for consideration the argument that has been made that as the profits of the business in the past years have exceeded the amount necessary to meet the required annual payments, there has been an unlawful accumulation of profits which by virtue of section 63 of the Real Property Law (as amd. by Laws of 1916, chap. 364) should be distributed to the presumptive taker of the next eventual estate.

In considering this question we must bear in mind that the accumulations are not out of income from a specific trust fund, but are surplus profits of the business, arising out of the capital invested in the business, and the successful prosecution of the business enterprise by the trustees.    It has never been questioned, so far as I have been able to ascertain, that a testator could direct his executors to carry on his business after his death, in conjunction with partners, if the business had been carried on as a copartnership prior thereto, or solely if he alone had conducted it.    Certain rules relating to such transactions of the business by the executors or trustees have become well established and fixed.    While these propositions of law are not directly involved in the case under consideration, a reference to them will, in my opinion, throw light upon the question that is involved here.    First, it is only that portion of the testator's estate that is invested in the business at the time of his death that can be appropriated to business purposes.    The executor cannot invest the general assets of the estate in such business, and as a corrolary of this rule the general assets of the estate are not liable for the debts contracted by the executors in the conduct of the business.    The liability is the individual liability of the executor, and his recourse is to the assets invested in the

business for recoupment. (*Ex parte Garland*, 10 Ves. Jr. 110, 118; *Burwell* v. *Mandeville's Executor*, 2 How. [U. S.] 560, 576; *Delaware, L. & W. R. R. Co.* v. *Gilbert*, 44 Hun, 201; affd., on opinion below, 112 N. Y. 673; *Willis* v. *Sharp*, 113 id. 586, 590; *Saperstein* v. *Ullman*, 168 id. 636.)

Where a testator authorizes the continuance of the business, that portion of the assets of the estate which is invested therein is subjected to the hazards of the business obligations to be incurred, which of necessity have to be met from the proceeds of the business, otherwise the capital investment of the estate would soon be dissipated, and the enterprise brought to ruin. No prudent man would undertake an expensive business without a fund by which expenses and credits are supported. If all the profits of the business should be distributed annually, there would be left no fund to which resort could be had to meet the possible future exigencies of the business. Certainly it would be proper business sagacity to hold a surplus reserve from prosperous years to meet the necessities of years when profits were small and possibly loss instead of profit might result. The Court of Appeals has held this to be within the discretion of the trustees. (*Thorn* v. *De Breteuil*, 179 N. Y. 64, 78.) Charles Kohler foresaw these contingencies. He realized that although the business had prospered under his management, direction and control, he was authorizing it to be carried on by others; that when the man whose skill, business judgment and foresight had built up the business could no longer direct its affairs, a profitable business enterprise might well be not alone less profitable but that losses and disaster might be the result, and he makes provisions in view of such possibilities. First, he provides in the 12th clause of the will, " should the continuing  *  *  *  of my said business by my said trustees as aforesaid, prove to be unprofitable to my estate, I hereby direct that upon no account shall they be held liable for any loss or damage my estate may sustain by reason of such continuance." Again in the 14th clause, " should the profits of the business be less than the aggregate of said yearly payments to my wife and daughters, such payments shall not be decreased — they shall be maintained,  *  *  *  such deficit shall be made good out of the residue of my estate, which for

First Department, July, 1920.       [Vol. 193.

the time being is invested in such business." Not alone was that portion of the estate which was invested in business subject to the hazard of business, but it was charged with the annuities to the wife and daughters, which it was the testator's expressed intention should be maintained at all hazard. Therefore, while there has been an accumulation of profits in the time during which it has been operated by the trustees, when we consider that such period has been one of unusual activity and large profits resulting from the inflation of currency, sudden accumulations of wealth by many individuals, conditions arising out of the World War, can we say that the holding of the sum to meet the business depression, which has always heretofore followed such a period of expansion when conditions are being readjusted to their normal course, is unjustifiable and without reason?

It is to be noted, *first*, that there is no direction in this will for an accumulation of profits; *second*, that the annuities are not ·to be paid out of profits. These two considerations distinguish the case under consideration from *Thorn* v. *De Breteuil* (179 N. Y. 64). Nor can any intention that the income shall be accumulated to· be paid over at some future time to beneficiaries be implied from the terms of this will, which would render the provision therefor void (*Cochrane* v. *Schell*, 140 N. Y. 516), for the reason that the annuity is not to be paid out of income or profits of the business but from the business.

In my opinion, section 63 of the Real Property Law, which by section 11 of the Personal Property Law is made applicable to estates in personal property (*Matter of Harteau*, 204 N. Y. 292, 300), does not apply to the facts of this case. Here there is no limitation of an expectant estate, and no suspension of the power of alienation or of the ownership. The trustees are to carry on the business for such time as they deem for the best interest of the estate, with full power of sale thereof at any time in their discretion. The business is vested in the trustees without limitation over to any person. The testator contemplated the sale of the business during the lifetime of the annuitants, for in the 15th clause of the will he provided that when the trustees should sell, then he restricted the investment of the proceeds from the sale to investments in which by·law trustees

may invest. There is added this very significant phrase: "Thereafterwards the income paid half yearly to my wife and daughters as aforesaid, shall of course be limited to the net income arising from such investments." The amount of the profits arising from the business would be problematical, and it would have been difficult, if not impossible, to set aside an aliquot part of the business investment, which would in all events produce the sum of $25,000 annually. When the investment was in such securities as trustees are allowed to invest, the income is fixed and such division can easily be made. Therefore, the testator provided an annuity charged upon the business as a whole while that was being carried on by the trustees. On the sale of the business he directed trusts to be established in which the amount was to be paid out of income or profits, which according to well-settled principles of law heretofore discussed would limit the amount to be paid to the beneficiaries to the net income arising from such investment. Then under the 18th clause of the will if there should be any balance of the residuary estate remaining, after the trusts were created, that would be divided between his children share and share alike. The power of alienation of the assets in the business was not suspended, because at all times the trustees had an absolute power of sale, the exercise of which would not contravene, but on the contrary be in furtherance of the terms of the trust. What is meant by the "suspension of the power of alienation" in the statutory provision against perpetuities, was clearly explained by Chief Judge ANDREWS: "But the mere creation of a trust, does not, *ipso facto*, suspend the power of alienation. It is only suspended by such a trust, where a trust term is created, either expressly or by implication during the existence of which, a sale by the trustee, would be in contravention of the trust. Where the trustee is empowered to sell the land, without restriction as to time, the power of alienation is not suspended, although the alienation in fact may be postponed, by the non-action of the trustee, or, in consequence of a discretion reposed in him, by the creator of the trust. The Statute of Perpetuities is pointed only to the suspension of the *power* of alienation, and not at all to the time of its actual exercise, and when a trust for sale and distribution is made

without restriction as to time, and the trustees are empowered to receive the rents and profits pending the sale for the benefit of beneficiaries, the fact that the interest of the beneficiaries is inalienable by statute, during the existence of the trust, does not suspend the power of alienation, for the reason that the trustees are persons in being, who can, at any time, convey an absolute fee in possession." (*Robert* v. *Corning*, 89 N. Y. 225, 235. See 1 R. S. 723, §§ 14–16; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 42; 1 R. S. 730, § 63; now Real Prop. Law, § 103.)

In my opinion, Charles Kohler intended primarily to secure an annual income for his wife and daughters of $25,000 each at all hazards. To accomplish this purpose, he first authorized his trustees to create out of his residuary estate from trust funds sufficient for the purpose from which such annual income should be paid. But if the trustees decided to exercise the discretion which he gave them of continuing the business, then the payments of $25,000 to each annually should be a charge on the business until the trustees should exercise the power of sale, absolutely given to them by his will, in which event the trustees were to create the trusts sufficient for the purposes, invest the same in such securities as trustees are allowed to invest in by law, and thereafter the annuities were to cease and the amounts payable were to be paid out of income and were limited by income. If there was a deficiency of income, the payment to the beneficiary would be reduced. If there was a surplus, it would be distributable to the presumptive takers of the next eventual estate. This construction, in my opinion, carries into effect the intention of the testator and makes effective each and every portion of the will, and does not contravene any rule of law.

The trustees having exercised their discretion and continued the business, any portion of the residuary estate that was not invested in the business at the time of the testator's death should be distributed to the residuary legatees.

The decree should be modified to conform to this opinion and, as modified, affirmed.

CLARKE, P. J., and LAUGHLIN, J., concur; SMITH and MERRELL, JJ., dissent.

MERRELL, J. (dissenting):

This is an appeal from a decree of the surrogate of New York county, entered upon the report of a referee, in proceedings for the construction of the last will and testament of Charles Kohler, deceased, and for an accounting of the trustees of said will. A proceeding was first begun before said surrogate in which the surrogate wrote an opinion suggesting, if the executors would file an account of their proceedings, that the two proceedings could then be consolidated and all of the contentions of the parties could be presented *de novo* and without prejudice. The executors then filed an account of their proceedings bringing their accounts down to November 1, 1916, and the proceeding to construe the decedent's last will and testament and the proceeding to account were consolidated, and the whole matter sent to a referee. The referee rendered a report on July 12, 1917, which was confirmed by one of the surrogates of New York county, with the exception of the finding respecting surplus income accruing from December 1, 1914, to January 18, 1915, which was the date of the birth of Nils Kohler Florman, the child of one of the decedent's daughters. The proceeding was thereupon remitted to the referee, who on September 30, 1918, rendered a second report which followed his first report, and the modification suggested by the surrogate. The decree appealed from was entered on the 21st day of November, 1918. All parties have appealed, except the special guardian of Nils Kohler Florman, the aforesaid infant son of the testator's daughter, Olga Florman.

Charles Kohler, the testator, executed his will on the 15th day of July, 1912, and died on the 4th day of June, 1913, a little less than a year after the will was made. On the 9th of July, 1913, decedent's will was admitted to probate and letters testamentary issued to the petitioners herein, Veronica M. Kohler, decedent's widow, and William B. Ellison and Richard W. Lawrence, who were the three executors and trustees named therein. At the time of his death the decedent had three daughters, Olga V. Florman, then about nineteen years of age, Vera M. Kohler, eleven years of age, and Rita M. Kohler, ten years of age. Veronica M. Kohler, decedent's widow, and also one of his trustees, is also the testamentary

First Department, July, 1920.        [Vol. 193.

guardian of the two minor children, Vera M. Kohler and Rita M. Kohler. The decedent devised certain real estate and personal property to his widow and made a large number of specific bequests. Numerous of these bequests were to persons either in his employ or employed by business concerns in which he was interested. At the time of his death decedent's principal business was conducted in the name of Kohler & Campbell. This company carried on an extensive business in the manufacture of pianos in the city of New York, which enterprise was owned entirely by testator at the time of his death. Since decedent's death this business has been incorporated by his executors, and the estate holds all of the capital stock of the new corporation, except 1,000 shares which are alleged to have been assigned to the president of the corporation. The decedent was also interested in seven other corporations engaged also in the business of building pianos and their parts. The decedent owned the majority of the stock in these other piano enterprises and held promissory notes of such companies to a considerable amount. No inventory was ever made of the assets of decedent's estate, as required by law. A proceeding, however, was taken to assess the estate for the purpose of fixing inheritance taxes, and such assessment has been used by the executors and trustees in their several accounts as the basis of the valuation of the assets which came into their hands. Of course, such an assessment is little evidence of actual value, and has no more probative force than proof of the assessed value placed upon real or personal property by local assessors for the purpose of taxation. However that may be, the accounts of the executors and trustees which have been filed have used the valuations fixed by the appraiser in the above-mentioned proceedings for the purpose of showing the value of decedent's estate which came into their hands. As shown by the first account, dated December 1, 1914, the testator left a very large estate. In this account the executors charged themselves with $4,988,-740.81. This sum includes approximately $581,224.01 of income which the estate had produced after paying $100,000 to the widow and daughters as income for the first year to which they were entitled under the will. Of the aforesaid sum of $4,988,740.81, approximately $3,200,000 was stated

as the value of decedent's interest in the business of Kohler & Campbell and the other piano enterprises in which he was interested. On this first accounting the executors reported that they had expended and disbursed during this first year the sum of $688,428.09, which left a balance then in their hands of $4,300,312.72, leaving a net balance of over $1,000,000 after deducting the value, as aforesaid, of decedent's own business and the other piano enterprises, as fixed by the appraiser for the purpose of taxation. This sum included notes of the aforesaid companies held by decedent at the time of his death, aggregating approximately $300,000. These notes have been considered most excellent security and have been up to this time, so far as disclosed, retained in the estate by the trustees. After providing for the several legacies above mentioned the decedent left his country place together with all household furniture and property therein to his widow.

The clauses of the will which are here in dispute and concerning which construction is asked are as follows:

" *Sixth.* I give, devise and bequeath to the following employees of the concerns in which I am interested, provided, however, that they are such employees at the time of my decease: Frederick Phannstiehl, Two thousand dollars ($2,000); Thomas Donquardt, Two thousand dollars ($2,000); Owen McManus, One thousand dollars ($1,000); Frank Bartel, One thousand dollars ($1,000); William L. Kneeble, One thousand dollars ($1,000); William Barton, One thousand dollars ($1,000); Joseph Fiala, One thousand dollars ($1,000) and Herbert Lajoie, One thousand dollars ($1,000).

" Each of the foregoing bequests shall lapse in case the legatee shall not be in my employment, or in the employment of one of the concerns in which I am financially interested at the time of my decease.

" I also give, devise and bequeath the sum of Five hundred dollars ($500) to such of the other employees of the businesses carried on under the names of Kohler & Campbell and the Autopiano Company, as shall be in the employ of these two concerns at the time of my death and for fifteen (15) years or more prior thereto. * * *

" *Eighth.* All the rest, residue and remainder of my estate, both real and personal, and of whatsoever description and

wheresoever situated, I give, devise and bequeath unto my Trustees hereinafter named, in trust, as follows:

"*First.* To set aside out of my said residuary estate a share or portion thereof sufficient for the purpose, and to hold the same in trust, for my daughter, Olga V., investing and reinvesting the same from time to time and paying over the sum of Twenty-five thousand dollars ($25,000) per annum, payable semi-annually during her natural life, and in addition thereto when she arrives at the age of twenty-five (25) to pay over to her the sum of One hundred thousand dollars ($100,000); when she arrives at the age of thirty-five (35) a further sum of One hundred thousand dollars ($100,000); and when she arrives at the age of forty-five (45), a further sum of One hundred thousand dollars ($100,000), and upon her death, to pay over the balance remaining unpaid of the share or portion of my said residuary estate so set aside for her benefit as aforesaid, to such of her issue as shall be living at her death, share and share alike. Should any of her issue die before her, leaving issue at her death, then such issue shall take in equal shares the share the parent would have received had he or she survived her death. Should my said daughter, Olga, die leaving no issue surviving her, then, in that event, the said share or portion herein provided for her shall pass into and become part of my residuary estate. * * *

"*Fourth.* To set aside out of my said residuary estate, a share or portion thereof sufficient for the purpose, and to hold the same in trust for my wife, Veronica M. Kohler, investing and reinvesting the same from time to time, and paying over the sum of Twenty-five thousand dollars ($25,000) per annum payable semi-annually during her natural life. * * *

"*Eleventh.* I hereby give my said Trustees hereinafter named, the survivors and successors in trust, as full power and authority over my said personal and real estate as I myself now possess, to sell the same for cash or on mortgage at public or private sale; to mortgage, lease, hold and manage the said realty until in their discretion a sale thereof is made, and meanwhile to receive and collect the rents, issues and profits thereof, and to care for, repair, insure, and in case of destruction by fire, or otherwise, to rebuild, remodel or repair any building on said real estate in their care, and to receive,

collect, invest and reinvest the said personal property, and to receive and collect the interests and profits as fully and freely as I myself might do in my lifetime, and to pay the same over as hereinbefore directed.

" *Twelfth*. I hereby authorize and empower my Trustees hereinafter named at their discretion to retain the investments of my property in the form in which they may be at my death, and I also hereby authorize and empower my Trustees to continue any business now owned and carried on by me in the City of New York or elsewhere during such period of time as in their discretion they consider it to be of benefit to my estate. Should the continuing of said investment or the continuing of my said business by my said Trustees as aforesaid, prove to be unprofitable to my estate, I hereby direct that upon no account shall they be held liable for any loss or damage my estate may sustain by reason of such continuance.

" *Thirteenth*. In the continuing of my business as herein directed if the shares or portions set aside for my daughters as hereinbefore directed are already invested in such business, then it is my desire that they so remain until the business is sold by my Trustees, and I so direct.

" *Fourteenth*. And I hereby direct that while such business is being carried on by my Trustees as aforesaid, and while the shares or portions set aside for my daughters remain in said business as aforesaid, the sum of Twenty-five thousand dollars ($25,000) in half-yearly payments shall be yearly paid to each of my daughters out of said business, the sum of Twenty-five thousand dollars ($25,000) in half-yearly payments shall be yearly paid to my wife also out of said business. The said yearly payments of Twenty-five thousand dollars ($25,000) to each of my daughters as aforesaid and Twenty-five thousand dollars ($25,000) to my wife are to be made in lieu of profits and interest and irrespective of what the profits of the business are, that is to say, in the event of the profits of the business in any year being in excess of the aggregate of said yearly payments to my wife and daughters, such payments shall not be increased; and on the other hand, should the profits of the business be less than the aggregate

of said yearly payments to my wife and daughters, such payments shall not be decreased — they shall be maintained, and I so direct, and in the event of there being a deficit, that is to say, if the profits of the business do not equal the aggregate of the payments to be made to my wife and daughters as aforesaid, then, in that event, such deficit shall be made good out of the residue of my estate, which for the time being is invested in such business.

"*Fifteenth.* When in the judgment and discretion of my Trustees, they think it advisable that the said business should be sold, then, in that event, I hereby restrict the investment of the proceeds received from the sale of said business or from the sale or conversion of any of my property, real or personal, to investments in which by law Trustees may invest. Thereafterwards the income paid half-yearly to my wife and daughters as aforesaid, shall of course be limited to the net income arising from such investments, and the said yearly payments of Twenty-five thousand dollars ($25,000) to my wife and daughters respectively. as aforesaid shall thereupon cease.   *   *   *

"*Eighteenth.* Should there be any balance or residuary estate remaining after the bequests hereinbefore provided for, including the trusts also hereinabove created, then, I give, devise and bequeath the same to my said children to be divided between them share and share alike."

As above stated, after the proceeding was commenced by the executors to construe decedent's will, the last account of December 1, 1916, was filed. Prior to the filing of that account, the account of the executors for the year ending December 1, 1915, had been filed and a decree entered thereon. These accounts all set forth a full statement of the income received by the executors as well as the executors' disbursements, and it is disclosed therein that the decedent's widow and his three daughters have received since decedent's death the annual payments of $25,000 each as directed in the 8th clause of decedent's will. The 2d and 3d paragraphs of the aforesaid 8th clause set up trusts for the benefit of decedent's two remaining daughters in exactly the same language as above set forth in the 1st paragraph, for the eldest daughter, Olga.

On March 16, 1915, a decree was entered settling the accounts of the executors to December 1, 1914, and directing the executors to deliver to themselves as trustees all of the estate which then remained in their hands. Prior to the filing of the aforesaid account of December 1, 1914, the executors had elected to turn over all of the assets and property of Kohler & Campbell to a new corporation, known as Kohler & Campbell, Inc. At the time of such accounting the executors held 8,000 shares of stock in this company set forth in the account as being of the value of $1,177,972.31. This stock appears in Schedule B1 of the account under the head, " Personal property unsold at appraised values." This, with other securities set forth in this schedule, aggregates the sum of $3,980,232.40. The aforesaid decree of March 16, 1915, directed the executors to turn over to themselves as trustees all of these securities and *allowed full commissions to the executors thereon.* In the account of November, 1916, upon which the decree appealed from was entered, it appears that there was at that time surplus income on hand amounting to $1,278,559.95, which is also the amount of surplus income as set forth in the decree settling such account. In Schedule B of the account of December 1, 1915, under the head, " Personal property unsold at appraised values," are set forth, among other securities, 6,950 shares of stock in Kohler & Campbell, Inc., of the appraised value of $1,023,387.50. The same number of shares still remain in the hands of the trustees. The trustees continued to hold all of the estate in practically the same condition as when it came into their hands under the first decree. After the opinion of the surrogate was handed down and on March 16, 1916, the trustees claim to have divided the entire estate so remaining in their hands into four trust funds. For this purpose the trustees made certain bookkeeping entries to the effect that they had created the four trusts directed by the 8th paragraph of decedent's will as follows: Veronica M. Kohler, $881,831.24; Olga V. Florman, $1,182,028.89; Vera M. Kohler $1,182,028.89; Rita M. Kohler, $1,182,028.89; total, $4,427,917.91. The aforesaid aggregate trust fund includes the $4,300,312.72 paid to the trustees by the executors under the decree of March 16, 1915, together with an unproductive piece of real estate estimated

to be worth $110,000 and an increase of principal on the sum turned over by the executors to the trustees, amounting to the sum of $17,605.19. The trustees assert that the aforesaid fund for the benefit of decedent's widow is necessary to produce $25,000 a year, and that the aforesaid sums for each of decedent's daughters must necessarily be held in order to produce $25,000 each a year and the $300,000 necessary for the purpose of paying to each daughter the three payments of $100,000 each under the 8th clause of decedent's will. It appears, however, that the trustees have arbitrarily apportioned what they claim to be the net value of the estate among the several trusts without any regard whatever for the amount of income which those separate funds have produced, and are now producing, or which in the future they may produce. The trustees state that their estimate of the sum necessary is based upon the proposition that they may at some future time be compelled to invest the trust estate in securities which would not net to exceed three and one-half per cent per annum. Between the date of testator's death, on June 4, 1913, and November 1, 1916, a period of only a little more than three years, the executors and trustees have, beyond the annual payment of $100,000 income to testator's widow and three daughters, accumulated income from the decedent's estate amounting to the sum of $1,869,783.96, of which amount the aforesaid sum of $581,224 was turned over to the trustees under the decree of March 16, 1915. It is claimed by the decedent's three daughters that under the 8th clause of decedent's will the duty devolved upon the trustees to immediately set apart the trusts therein mentioned, and that they should be no larger than necessary to produce the sums therein mentioned, and as soon as the executors and trustees could marshal the assets of the estate, with due regard to the best interests of the estate, that the remainder over should immediately be distributed to the three daughters under the true residuary clause of decedent's will. The trustees claim that they have by the aforesaid bookkeeping entries set up said trusts, and that they have a right to hold all sums therein mentioned for the purposes of the trusts. The trustees concede that no reason appears in the will for the postponement of the setting up of the aforesaid trusts, but claim that they have already

performed their duty in that respect. Decedent's three daughters also assert that if it should be held that the trustees have in fact set up the trusts in question, their action in that regard has been an abuse of discretion for the reason that the trust funds are excessively large and thereby the residuary legatees are deprived of the large sums of money to which they claim to be entitled under the residuary clause of decedent's will. The special guardian of the infant Nils Kohler Florman contends that, the three life beneficiaries having already received the annual payment of $25,000 each, all of the past accumulations of income are payable to the infant and to the persons who are presumptively entitled to the remainder of the estate upon the death of the life tenants, and that such rule applies to all surplus income which may hereafter be received. The learned surrogate held when the first proceeding was instituted before him that the trustees had at that time failed to set up the trusts created in decedent's will, and that all of the surplus income which had up to that time accumulated was a part of the residuary estate, and further held that when the trustees should create and constitute the trust funds which they are directed to constitute under the 8th clause of the will, thereafter all accumulations on the four trust funds should be disposed of as follows: " The trustees having once constituted the trust funds as herein provided, thereafter all accumulations on the four trust funds should be disposed of as follows: In the case of subdivision 1, for Mrs. Florman, all excess income should be applied according to the rule in *Spencer* v. *Spencer*. All surplus for a particular year should be paid over to the holder of the next eventual estate, that is, to the issue of Mrs. Florman, at the time of such payment. If at such time a deficit exists in the annual payments made to Mrs. Florman theretofore, such deficit should be payable, first, out of the surplus. In the case of the trust funds for the two minor children, under subdivisions second and third, a similar disposition of the income should be made, except that all accumulations not needed for past deficit should be paid to those entitled to the next eventual estate. That is, if there be issue, they take. If there be no issue, then those entitled under paragraph eighteenth will take." (96 Misc. Rep. 455, 456.)

When, however, the account was filed and the proceedings

First Department, July, 1920. [Vol. 193.

were consolidated, the learned referee held and the surrogate has determined that under decedent's last will and testament none of the trusts can be created until testator's business has been disposed of, and that the alleged setting up of the trusts by the aforesaid bookkeeping entries was premature; that all of the surplus income belongs to the trust funds of the three children and must be distributed pursuant to section 63 of the Real Property Law. That statute provides as follows: "When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to to the persons presumptively entitled to the next eventual estate." (Consol. Laws, chap. 50 [Laws of 1909, chap. 52], § 63, as amd. by Laws of 1916, chap. 364.)

In other words, the learned referee and the surrogate have held that all of this vast amount of surplus income will go to persons whom the testator clearly intended should take only the remainder over of the trust funds upon the death of the life beneficiaries. Upon such theory, assuming that the annual surplus is $600,000, the distribution of that income should be as follows:

| | | |
|---|---:|---:|
| To Olga's infant child as the next eventual owner of Olga's estate | | $200,000 |
| To Olga as eventual owner of one-half of her sister Vera's estate | $100,000 | |
| To Olga as eventual owner of one-half of her sister Rita's estate | 100,000 | |
| | | 200,000 |
| To Vera as eventual owner of one-half of her sister Rita's estate | | 100,000 |
| To Rita as eventual owner of one-half of her sister Vera's estate | | 100,000 |
| | | $600,000 |

The referee seems to have held that there is no surplus income from the fund to be set apart for the decedent's widow

although under the 8th clause of decedent's will her trust fund should be set aside in the same manner as the trust funds of the other life beneficiaries. Of course, the remainder over of the trust fund for her benefit, upon the death of Mrs. Kohler, remains unbequeathed and unquestionably passes under the residuary clause of decedent's will. Under the first opinion of the surrogate, which in this respect is in harmony with the conclusions of the referee and the decree of the surrogate entered thereon, the remaindermen would take the surplus income from the trust for the benefit of Mrs. Kohler as being the owners of the next eventual estate, and the income upon the trust funds for the benefit of decedent's three daughters would also go to those persons who were found to be presumptively entitled to the remainder. I am convinced that the testator never contemplated any such division of the income from his estate as is brought about by such construction. The chief difficulty, it seems to me, arises from the fact that the trustees have failed to perform their duty and have endeavored to take and retain possession permanently of testator's entire estate for the purpose of creating the trust funds which it was their duty to set up under the 8th clause of decedent's will. Under that clause it was the duty of the trustees to immediately set aside, either separately or *in solido*, funds sufficient for the purpose of creating an annual income of $100,000 and for the purpose of paying to each of decedent's daughters $300,000 at the times therein specified. It is clear that the testator intended to leave the amount of such funds somewhat to the discretion of the trustees. The trustees could also exercise their discretion as to what securities should be placed in such trust funds, but the paramount intention of the testator seems to have been, taking a reasonable time to close up decedent's business and to marshal the assets, that nothing remained for the trustees to do except to create the trusts and distribute the remainder. It has been claimed by several of the parties and seems to be still claimed by the trustees that they have the authority arbitrarily to say that the whole of decedent's estate is necessarily held in these trust funds. I am convinced that, under the clause of decedent's will which gives to the trustees authority to carry on decedent's business and to continue the securities held by decedent at

the time of his death, the trustees received no additional authority and no powers in trust except for the purpose of accomplishing the things which they were directed to accomplish in the due administration of decedent's estate. Those things were three in number: *First*, to pay decedent's debts and general legacies. *Second*, to create the trust funds directed to be created under the 8th clause of the will. *Third*, to distribute the residue and remainder of decedent's property to the residuary legatees named in the 18th clause of decedent's will. As above stated, the learned referee and the surrogate have held that this trust cannot in the first instance be set up until decedent's business is sold, and a great deal of stress has been laid upon the fact that it is necessary for the executors to carry all property of these manufacturing enterprises which the decedent either individually owned or in which he was interested at the time of his death. A casual reading of decedent's will would indicate that it was his intention to create the trusts immediately, and that the provisions were support provisions which authorized the trustees to make payments on income dating from the date of decedent's death. Under the 14th clause of decedent's will he specifically gave to the trustees the right to invest the trust funds in decedent's business or to permit such funds to remain therein invested. Such could not be the case if such trusts could not be created until after the business was sold.

It has also been argued by the appellants that the word " businesses," as used by the decedent in his will, showed an intention that the trustees should hold the estate together and continue to run all of these various enterprises. It is clear to me that the decedent only authorized the trustees to carry on his business for a limited time, and only for such a reasonable time as would enable them to marshal the assets of the estate without sacrifice, create the trust funds and distribute the balance. While it is true that the testator states in his will that his trustees shall have a discretion respecting the carrying on of his business and the right to hold securities owned by him at the time of his death, I am of the opinion that the testator had in mind only the usual and reasonable discretion which is conferred by law upon executors and trustees in the usual and ordinary administration of all estates.

Testator knew his estate to be large and that it would necessarily take the executors a considerable length of time to marshal the assets, and that before the estate could be settled it would undoubtedly be necessary for the executors to carry on any business in which the decedent was engaged, for some length of time, at least. Realizing this, he placed in his will the aforesaid provisions respecting the executors' discretion to carry on his business. No time, however, is specified within which the business should be closed out, and the business is not directed to be carried on for the benefit of any particular beneficiary or any group of beneficiaries. It must be conceded that whatever power was intended to be conferred must be exercised within the lifetime of his daughters for whose benefit the trusts were to be set up and the income therefrom paid during their lives. It very often happens that a testator directs his executor, by testamentary provision, to pay his debts and funeral expenses, still such a provision does not enlarge the usual and ordinary powers or duties of an executor. *Ex officio*, executors or trustees have no authority or power to carry on a decedent's business. *It is only when such power is conferred by a testator in clear, explicit and unequivocal language that such power exists.* (*Willis* v. *Sharp,* 113 N. Y. 586; *Columbus Watch Co.* v. *Hodenpyl,* 135 id. 430.) This rule is well stated by Judge ANDREWS in the *Sharp* case, as follows: " By the general rule the death of a trader puts an end to any trade in which he was engaged at the time of his death, and an executor or administrator has no authority *virtute officii* to continue it, except for the temporary purpose of converting the assets employed in the trade into money. * * * But a testator may authorize or direct his executor to continue a trade or to employ his assets in trade or business, and such authority or direction, if strictly pursued, will protect the executor from responsibility to those claiming under the will, in case of loss happening without his fault or negligence, and also entitle him to indemnity out of the estate for any liability lawfully incurred within the scope of the power. * * * The courts, while they have sustained with substantial unanimity the validity of a direction of a testator in his will that his trade should be continued, whether his business was that of a sole trader or of a firm of which he was a member, have applied

stringent rules of construction in ascertaining both the existence and extent of the authority of the executor. In the first place, the intention of a testator to confer upon an executor power to continue a trade must be found in the *direct, explicit and unequivocal language of the will, or else it will not be deemed to have been conferred* * * *, and in the next place a power, *simpliciter*, to carry on the testator's trade, or to continue his business in a firm of which he was a partner without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade and not the general assets of the estate."

The rule is similarly stated in 18 Cyc. at pages 241–243, from which the following is a brief quotation: " The general rule is that neither an executor nor an administrator is justified in placing or leaving assets in trade, for this is a hazardous use to permit of trust moneys; and trading lies outside the scope of administrative functions. * * * Good discretion, however, may require some latitude in closing out the decedent's business, and this a probate court will duly consider when passing upon the representative's accounts. The personal representative may be justified in continuing the business of the decedent so far as is necessary for the purpose of winding up the same and converting the assets into money or carrying out existing contracts of the decedent. * * * Under circumstances not clearly imprudent, an executor may pursue *an authority plainly conferred upon him* by the will in continuing a decedent's business; although less as an executor perhaps than as one specially empowered and so honored or burdened by his testator's personal confidence."

Having in mind these rules and the probable necessity of carrying on his business, for a time, at least, the testator inserted in his will the aforesaid provisions, which would save his executors harmless from any personal loss during the period when decedent's business must necessarily be carried on by them in the due administration of his estate. It cannot be contended, however, that under any power or direction contained in decedent's will, his executors were authorized or empowered, either as such or as trustees, to hold permanently

all of decedent's stock in various manufacturing enterprises under the guise of carrying on decedent's business. The management of the Kohler estate strikingly illustrates what could be done by executors and trustees if their powers were not strictly limited to those *explicitly conferred* by the will under which they act. It is claimed that under the 14th clause the testator has shown the unmistakable intention of empowering his executors to so continue his business indefinitely for the purposes of the trusts. It is clear that under the 14th clause decedent simply made the payment of $25,000 yearly to each beneficiary a charge upon his business so long as the trust fund which created that amount remained therein invested. The will states, after directing such payment, that if there is any deficit it shall be made up from the "residue" of his estate which "*for the time being* is invested in such business." It, therefore, is apparent that the testator meant that the directions contained in the 14th clause of the will would apply only to the payments of the $25,000 therein mentioned to the several beneficiaries yearly during the period of administration of the estate, and *before the residuary estate has been paid over* to those entitled thereto. It is very clear that the decedent did not intend that any part of the $100,000 should be paid out of the corpus of the trust during such period, for he specifically states that any deficiency shall be paid from the residue of his estate, which for the time being was invested in his business. This expression gave to the trustees no added authority to retain the residue of decedent's business permanently. The 15th clause of decedent's will also supports this theory, for the testator therein specifically states that when the trust funds shall become permanently invested in the legal securities therein mentioned, the $25,000 "yearly" payments mentioned in the 14th paragraph shall cease, and that "thereafterwards the income paid half-yearly to my wife and daughters as aforesaid, *shall of course be limited to the net income arising from such investments,* and the said yearly payments of Twenty-five thousand dollars ($25,000) to my wife and daughters respectively as aforesaid shall thereupon cease." It, therefore, seems to me that it was the primary intention of the testator to empower his trustees as soon as practicable to establish permanent trusts, and, after such trusts

were so permanently established, the limit of the net income to be paid to the life beneficiaries should be the income which was produced by these trust funds. There is nothing in the will which in any respect indicates that the decedent intended to divide his property in any unequal manner or to have one of his daughters receive any greater benefit from the estate than the others. It is also apparent that the instructions contained in the 8th paragraph of decedent's will contemplated the creation of a fund neither too large nor too small, but sufficient to secure the payment to each of the daughters and to his wife of the sum of $25,000 each year, and to each daughter $300,000 at the times therein mentioned. It cannot be held that the aforesaid payments were intended by the testator to be annuities because in the 15th clause of his will the testator expressly provided that eventually the half-yearly payments to the wife and daughters should be limited to net income. Upon the trial the evidence of an expert accountant was given showing that the amount of the trust fund necessary to pay $300,000 to Olga at the times mentioned in paragraph 8, based on three and one-half per cent interest, is $199,114.72; based upon four per cent interest, the fund required would be $176,121.39. The sums shown to be necessary for the funds of Vera and Rita are somewhat less. But giving to the trustees the full benefit of the doubt, and assuming that only three per cent may be produced, it is apparent that only $200,000 would be necessary to be set aside for the purpose of establishing that portion of the fund necessary for making the three payments of $100,000 each. The balance of the fund necessary to pay $25,000 yearly would not even approach the estimates of the trustees. If the trustees could do their duty exactly as instructed in clause 8 of the will technically there would be no income undisposed of. However, it is plain that in the exercise of ordinary discretion the trustees will probably set up a fund which is reasonably sufficient to provide for the payments set forth in the 8th clause. There would be probably from year to year some surplus, or, if misfortune befell the estate, the income might even be less some years than the sum indicated by the testator. It, however, clearly appears that the paramount intention of the testator was that his wife and his three daughters should enjoy all of the income which might

be produced by these trust funds when finally set apart, no matter whether this income was a little less or a little more than the sum of $25,000. This intention is very clear, not only from the expressions used in the will, but also from the familiar rule of construction that a testator will be deemed to have provided for the payment of all income which may be produced from a fund where such construction can reasonably be given to a will.

Under the 15th paragraph of the will decedent specifically indicated such intention, by stating that *after* the permanent investment of these trust funds in legal securities, his wife and daughters should " of course *be limited* to the net income arising from such investments." In other words, that they should receive whatever the income was from the trust funds in question. When the trust funds are finally fixed to the satisfaction of the court they will become as stable in amount as if the amounts as set aside had been specified by the testator. The testator left the fixing of such amounts largely to the discretion of his trustees, but such discretion cannot be abused. In the six years since decedent's death the property which the trustees claim to have set aside in these trust funds has produced an income which, after payment of all expenses and $100,000 annual income to decedent's widow and children, leaves a surplus of nearly $3,000,000, taking into consideration the $581,224.01 which was included in the first account of the trustees. It is, therefore, apparent upon the face of the account, that, if the trustees have attempted to exercise their discretion, it has been abused. However, I think that in this respect the court should follow so much of the report of the referee as finds that no trusts have as yet been set up, and that in that respect the decree appealed from should be affirmed.

In all other material respects it is my opinion that the learned referee and surrogate have reached a conclusion which is unfair and unjust and against the expressed intention of the testator. Having held that the trustees have not, as yet, set up the trusts directed to be created, and it being apparent that the estate is still in the process of administration, and that the accumulated income is simply set forth in the accounts for the purpose of distribution, the court must hold that all of

such accumulated income is a part of the corpus of the estate, and should pass to the residuary legatees under the 18th clause of the decedent's will, after first properly setting up the trusts directed to be created in the 8th clause of the will. It also follows that it was the clear intention of the testator that the trustees should place only sufficient property in such trusts as may be necessary for the purpose of producing the income specified, and in case there should be any additional income beyond that required to make the several payments of $25,000 a year, that the surplus should be paid to the life beneficiaries. As the decedent has so provided for the disposition of the income from the trust funds in question, section 63 of the Real Property Law (which has now been extended to personalty by section 11 of the Personal Property Law) does not apply, and no part of decedent's estate passes thereunder. The conclusion reached will work out equally to all the interested parties, and will carry out to the letter what I regard as the paramount intention of the testator, which was that his children should be equally treated, should receive an equal share of his estate, and that his widow should receive the net income from the trust which his trustees were directed to set apart for her benefit.

The special guardian of the respondent Nils K. Florman contends that the former decrees entered upon the accounts of December 1, 1914, and December 1, 1915, are *res adjudicata* respecting the surplus income and also respecting the fact that the trustees have authority to hold all of the surplus income as a part of the trust funds. These proceedings have been instituted by the trustees for the purpose of construing decedent's last will and testament, and particularly respecting the trusts therein created. It is apparent that the trustees do not believe that these matters set forth in their petition and account have been passed upon by the surrogate in any such way as to preclude this court from passing upon the whole matter. The mere fact that certain income was included in the accounts already filed; that all of the assets have been turned over to the trustees by the executors, and that such income has been directed to be paid over to the trustees by the executors, is not an adjudication respecting the rights of the parties either in such funds or respecting the setting up of

the trust in question or in respect to what property shall constitute the trusts and the manner of distribution. The decrees entered upon these accountings are undoubtedly *res adjudicata* as to any money or property expended by the trustees or executors and paid out and not now in their hands, but as to the property of the estate which now remains in the hands of the executors and which now appears in the account last filed, and which account forms a part of and is the basis of this consolidated proceeding, it is very clear that this court has full right and authority to pass on all questions which are now raised by any or all of the parties.

As hereinbefore indicated, the surrogate based his first decision largely upon the case of *Spencer* v. *Spencer* (38 App. Div. 403), and on the authority of that case the learned surrogate held that any surplus income which might accrue passes to the persons presumptively entitled to the next eventual estate under section 63 of the Real Property Law. The facts in *Spencer* v. *Spencer* are admittedly quite similar to those in the case at bar. The will provided that the executors should set apart a sufficient portion of testator's real estate to yield a given amount and hold the decedent's real property in trust and out of the income to pay to the testator's widow for life the sum of $25,000, and it was determined that any balance of the income should be distributed to those persons who should presumptively be entitled to take the corpus of the trust estate. During the first period of five years there was a net income of about $30,000 per annum. During the years ending May 1, 1896, and May 1, 1897, there was a deficit of $2,000. At the time of the decision of the case all of the surplus income for the earlier years, except $4,000, had been distributed to those held to be entitled to the next eventual estate. In the action to construe the will it was held that the interest of the widow was not in the nature of an annuity, and that the accumulated surplus of $4,000 could not be used for •making up the deficits in the years 1896 and 1897, but should be distributed to the owners of the next eventual estate. It was also held that the principal of the trust fund could not be invaded to make up the deficiency. In the *Spencer* case, however, there was an actual surplus of income which it was held passed

under the statute,* and it was so intended by the testator. The surrogate (96 Misc. Rep. 441, 448), after discussing the *Spencer* case, then lays down the following rule: " The persons presumptively entitled to the next eventual estate are those who are entitled to the estate which is to take effect at the end of the period during which the rents and profits are undisposed of, or are not validly accumulated." (Citing *Matter of Harteau,* 204 N. Y. 292; *Tompkins* v. *Verplanck,* 10 App. Div. 572; mod., *sub nom. Matter of Tompkins,* 154 N. Y. 634; *Young* v. *Barker,* 141 App. Div. 801; *Meldon* v. *Devlin,* 31 id. 146; affd., 167 N. Y. 573; *Staples* v. *Mead,* 152 App. Div. 745.)

In the instant case, if I am correct in my interpretation of the decedent's intention concerning the disposition to be made of the income from the trust estate, all of such income passes to the beneficiaries and none is directed to be unlawfully accumulated. In fact, nowhere in the testator's will is there any direction to accumulate income lawfully or unlawfully. If any such accumulation has taken place it has accrued through improper or unlawful action on the part of the trustees or by reason of their failure to so set apart or manage the fund as to accomplish the desires of the testator. They could not look about to find reasons for holding that any invalid accumulations of income have been directed.

It is also clear that unless the trustees, by placing portions of the true residuary estate in the trust fund, withheld the same unlawfully from the residuary legatees, there is no unlawful suspension of the power of alienation or of the ownership. The statute can be held to operate only in respect to accumulations of income which are undisposed of, and which under the statute are for that reason deemed to pass to the owners of the next eventual estate. As was said in *Phelps' Executor* v. *Pond* (23 N. Y. 83): " The statute is founded upon the presumption that the donor of property may naturally be supposed to intend that the income should go to the same person to whom he had given that out of which the income arises."

In the instant case the intention of the testator is clearly

---

* See 1 R. S. 726, § 40; Real Prop. Law (Gen. Laws, chap. 46; Laws of 1896, chap. 547); § 53; now Real Prop. Law (Consol. Laws, chap. 50; Laws of 1909, chap. 52), § 63, as amd. by Laws of 1916, chap. 364.— [REP.

the opposite, as he gives to the remaindermen only such portion of the trust fund as remains in the hands of the trustees upon the death of the several life beneficiaries.

It is claimed by the three children of the testator and conceded by the executors that it was not the intention of the testator to unlawfully accumulate any income, and it is also conceded that it was not his intention that any part of the accumulation of income, if, indeed, there should ever be any, should pass to the persons to whom he gave the next eventual estate. In fact, it is clear that the testator intended that the fund itself from which the yearly payments were to be paid should be only sufficient for the purpose. It is also clear that he intended that it would not increase, and that the four main objects of his bounty would be the recipients of all of the income which the several funds were intended to produce. The case of *United States Trust Co.* v. *Soher* (178 N. Y. 449) is relied on by the executors as authority upon the proposition that none of the decedent's property should be permitted to pass under section 63 of the Real Property Law. In that case a quite similar situation arose, the life beneficiaries being two brothers. The court held that they had no authority to determine " or to indulge a presumption as to which of these brothers will survive the other, and cannot, therefore, before the happening of that event ascertain which will be entitled to the estate." The court also held that if they should attempt to say who was the owner of the next eventual estate, the result would be so unequal under certain contingencies that it would be unjust and unfair. While it does not seem to me that the *Soher* case is authority on the proposition that surplus income in the instant case passes under the residuary clause of the will, it clearly shows that the Court of Appeals would not stretch a point to hold that a decedent's property passes under section 63 of the Real Property Law and section 11 of the Personal Property Law, where such is contrary to the intention of the testator. It is plain that the theory upon which the statute is invoked by the special guardian for Nils K. Florman is that the testator by implication intended an unlawful accumulation of surplus income. In *Matter of Hoyt* (116 App. Div. 219; affd., 189 N. Y. 511), Mr. Justice McLaughlin, in delivering

the opinion of this court, said: " The construction adopted by the surrogate is one which imputes to the testator an intent to make an illegal disposition of a portion of his property, which is not to be presumed."

While the executors are willing to concede that under the *Soher* case all accumulated income which might arise will pass in the instant case to the residuary legatees, I do not think that the *Soher* case is sufficient authority to warrant the holding. If the trustees proceed to set aside the trusts as directed in the 8th subdivision of decedent's will and in the manner above indicated, there never will be any great amount of so-called surplus income. As above stated, the testator clearly indicated that he intended the beneficiaries of the four trusts each to receive *whatever income those trusts should produce* when properly set apart and permanently established. If I am wrong in thus construing testator's will, then I believe any surplus income arising at any time over and above $100,000 necessary to pay $25,000 to each of the four beneficiaries would not pass under the residuary clause, but would pass to those who are presumptively entitled to the remainder over upon the death of the life beneficiaries.

The 18th clause gives to the three children " any balance or residuary estate remaining after the bequests hereinbefore provided for, including the trusts also hereinabove created." While the testator evidently intended that all of his property should pass under this clause of his will which was not used to set up the trusts in question, still it is equally clear that he did not contemplate nor did he direct the accumulation of any surplus income. No surplus income could arise under the trusts if established and carried into effect as I think the testator intended. As above stated, it is claimed by the executors that they are still carrying on decedent's business and are now warranted in holding all of the decedent's estate allotted by them to the aforesaid trusts, which " bookkeeping trusts " include considerable income from the testator's estate, and that by so doing they are acting under the aforesaid discretionary power which the executors claim confers such right upon them. I do not think, however, that the acts of the executors, as evidenced by the accounts before us, disclose that the executors at any time elected to carry on

decedent's business, *nor are they now carrying on any business in which the decedent was engaged at the time of his death.* The account now before us does not contain a solitary asset, article or item of property which formerly belonged to decedent's old business, which was conducted by him under the name of Kohler & Campbell. The account is made up entirely of securities which have been approved by the trustees and held in their hands for the alleged benefit of the estate. Prior to the filing of the first account, all of the decedent's interest in Kohler & Campbell, including all of the chattels owned by him and held in that business, was transferred to the new corporation known as Kohler & Campbell, Inc., and from that time the trustees have had in their hands no asset of the aforesaid business, but simply shares of stock which represent the estate's interest therein. It is evident that the executors did not wish to assume any of the responsibilities of conducting decedent's business, and the new corporation was formed, the responsibility of running which immediately devolved upon its directors. While the trustees seem to claim that they have in some way continued decedent's business, such certainly is not the case within the purview of the law. They hold only the stock in various corporations which can be passed from hand to hand at any time. *Ex officio,* they have no voice in the corporate management, except to vote the stock. It is for the directors of these companies to manage them and to shape the policies thereof. These corporations are separate and distinct entities; they have separate books, separate assets, separate and distinct liabilities, and, perhaps, policies. Each corporation carries a surplus and depreciation account, and makes its own provision for the future. In the declaration of dividends the executors and trustees have no voice, *ex officio,* and can only approve or complain as stockholders. When dividends are declared they are paid to the stockholders in the usual way and such portion thereof payable to the estate has been placed in the income account. Counsel for the trustees do not claim that any part or portion of this income so placed in their income account can ever be turned back to any of the corporations. As above stated, each corporation carries its own surplus and makes its own provision for the future. Any attempt on the part

of the trustees to convert any of this accumulated income to the uses of the corporations would be larceny. Therefore, none of this accumulated income is invested in the continuation of decedent's business, and I do not think that it is contended by any one of the litigants that it is. The fact that the trustees hold all of these assets *en masse* is in no respect a continuation of any business. They simply have on hand these securities concerning the distribution and disposition of which instructions are asked. At the date of the decree of January 27, 1916, over $1,000,000 had been reinvested in legal securities and as the surplus income has increased at least $2,000,000 since, it is to be assumed that the trustees have continued investing the funds of the estate legally. It, therefore, will not be difficult for the trustees to immediately set aside sufficient legal securities for the trusts and to distribute the residue. As the other securities have been approved by the trustees and are claimed to be of great value, the rightful owners thereof will undoubtedly be glad to accept them, and no sale will be necessary. Even assuming that the trustees had power to carry on decedent's business and to continue to hold the securities owned by decedent, it must be conceded that it was their duty to set up the trust funds and distribute the residue during the lifetime of decedent's daughters. The executors have sufficiently marshaled the assets for that purpose, and the court should not permit a longer delay. It is difficult to see any good reason for keeping decedent's daughters out of possession of their own property. Certainly they would take as much interest in its preservation as the trustees, and undoubtedly they wish to have the full right of enjoyment free from the burden of being milked by annual commissions on income and not inconsiderable incidental legal charges.

It follows that the trustees should forthwith set up the trust funds for the benefit of decedent's daughters and wife in the manner above indicated, and should immediately distribute the residue to the residuary legatees, in accordance with the will of the testator.

The decree appealed from should be reversed, and new findings made, and a decree entered thereon in accordance with the views above expressed.

SMITH, J. (dissenting):

Granting that this will provides for a trust to pay an annuity, the primary duty of the trustee is to set aside sufficient of the corpus of the estate to execute the trust. The balance he must give to the residuary legatees. If later it should develop that the part set aside be larger than is necessary for that purpose he should pay such excess to the residuary legatees. If it should prove less then he may pay the annuities from the corpus. I think he may, under this will, keep the fund in the business and his right so to do is not temporary but may extend in his discretion throughout the trust period. If the profits be excessive, that is, much greater than necessary to pay the annuities, either the corpus of the fund withheld from the residuary legatees should be diminished, or if such a course would imperil the possibility of full payment in the future the court may adopt an alternative to give the excess income to the residuary legatees. Excess income may be retained in the case at bar sufficient to provide an up-keep fund for the business or possibly to appropriate such part thereof as may be shown to be necessary to make the business income producing. Further than that the accumulation of profits is, I think, illegal. (*Hascall* v. *King*, 162 N. Y. 134.) The annuitants have no cause of complaint if the *corpus of the estate as it came to the trustees* is preserved for the payment of their annuities. Where no specific sum is set aside for the payment of annuities I think the court has power to require the trustee to give to the residuary legatees at any time any part of the corpus set aside for payment of annuities that may be unnecessary therefor or any part of excess income if it be deemed unsafe to impair that corpus. Section 63 of the Real Property Law has no application as the residuary legatees are entitled to whatever is unnecessary to pay the annuities.

Decree modified as stated in opinion and as so modified affirmed.