WILLIAM AUGUSTUS SPENCER, CHARLES G. SPENCER and WOLCOTT G. LANE, Individually and as Trustees, etc., of LORILLARD SPENCER, Deceased, and the Said WILLIAM AUGUSTUS SPENCER and CHARLES G. SPENCER, as Surviving Executors, etc., of LORILLARD SPENCER, Deceased, Respondents, v. SARAH GRISWOLD SPENCER, and J. FREDERIC KERNOCHAN, as Administrator, etc., of JAMES P. KERNOCHAN, Deceased, Appellants, Impleaded with ELEANORA L. S. CENCI and Others, Respondents.

*Will* — $25,000 *of net income payable to a widow is not a demonstrative legacy — surplus income cannot be accumulated to meet a future deficiency of income — such deficiency may be made good from future surplus — a neglect to deduct commissions from income paid over is a waiver of the right thereto — commissions on money spent to improve real property.*

The will of a testator provided: "*Second*, if my beloved wife, Sarah Griswold Spencer, survives me, I direct and empower my said executors forthwith, upon my decease, to set apart a certain portion of my real estate which shall be amply sufficient, in their judgment, to yield at all times a yearly net income of twenty-five thousand ($25,000) dollars in gold, which said portion I hereby give and devise to my said executors, *in trust*, however, to let, lease, manage and improve and receive the rents, issues and profits thereof, and to pay the net income thereof up to twenty-five thousand dollars ($25,000) per annum in gold, or its equivalent, to my said beloved wife during her life in equal quarterly payments against her receipt in duplicate, and the balance, if *any*, of said net income to the persons, share and share alike, *per stirpes* and not *per capita*, who shall, during her life, be presumptively entitled to take the portion so held in trust on expiration of said trust, as hereinafter in this section provided. And I declare that the provision in this section made for my beloved wife is intended to be in lieu and bar of all dower and thirds, and all other claims on her part against my estate."

*Held*, that the provision in favor of the widow was not capable of a construction which would make it a demonstrative legacy of $25,000 a year;

That the testator's intention was that the widow should receive in the aggregate $25,000 multiplied by the number of years which she might live, so far as the rents and profits of the trust estate should produce that sum; and that, hence, in case the net income of the rents and profits did not amount to $25,000 in any one year, such deficiency should be made good out of the surplus, if any, of succeeding years;

That the trustees had no power, however, to retain the surplus in any year as security against a possible deficiency in succeeding years, as such a course would amount to an accumulation of the rents and profits of real property in violation of the statute upon that subject;

That the provision contained in the will directing the trustees to divide the surplus income among the persons presumptively entitled to the *corpus* of the trust estate, did not evince an intent on the part of the testator to make such persons the special objects of his bounty, as the statute, in the absence of any disposition thereof by the will, would have disposed of the surplus in the same manner that it was directed to be disposed of by the will, and as such provision was doubtless inserted to avoid the appearance of intestacy;

That where the trustees for a period of nine successive years had paid over the entire annual income of the trust estate to the beneficiaries, and during that period had rendered accounts to the latter in which the trustees made no claim for commissions, their right to such commissions was waived, as the income was the sole fund from which the commissions were payable, and they could not, by paying over to the beneficiaries the amount of the commissions in one year, create a charge or lien therefor on the income of the beneficiaries in future years.

*Semble*, that an unintentional error, resulting in an overpayment to the beneficiaries in one year, might be corrected in the next;

That the trustees were not entitled to commissions upon moneys expended in improving the real estate held in trust upon the ground that, the remaindermen being entitled to the *corpus* of the trust estate at the expiration of the trust term, the trustees would not receive commissions on such investment; as, under the will, the trustees were empowered to sell the realty, and should they do so they would receive full commissions on the sum realized on the sale, which would include the amount of any improvements made thereon from the personalty.

*Quære*, whether, at the expiration of the trust term, the trustees might not have a lien on the real estate for their commissions on the moneys expended in improving such real estate.

APPEAL by the defendant, Sarah Griswold Spencer, from so much of a judgment of the Supreme Court in favor of the plaintiffs and certain of the defendants, entered in the office of the clerk of the county of New York on the 14th day of July, 1898, upon the report of a referee, as provides: "And it is further adjudged that the question of construction of the will of said Lorillard Spencer, deceased, presented by the complaint herein, as to whether it is right and proper for the plaintiffs to retain any portion, and if so, what portion of the net income of the trust estate held by them under the second article of the said will for the benefit of Sarah Griswold Spencer and others, and remaindermen, in excess of the annual sum of twenty-five thousand dollars, in order to provide for a possible future deficiency in said net income, and also whether, if the net income of said trust estate in any year, together with such

accumulated income of preceding years as may then be in their hands, shall be insufficient to enable the said trustees to pay to the said defendant Sarah Griswold Spencer the said annual sum of twenty-five thousand dollars in gold, it will be right and proper for the said trustees to apply to that purpose any portion of the capital of the said trust estate, so that the said defendant Sarah Griswold Spencer shall, in any event, receive the sum of twenty-five thousand dollars in gold annually, is hereby answered in the negative, and it is hereby adjudged that the said plaintiffs, as such trustees, have no power or authority, under and by virtue of the said will, to retain any portion of the net income of said trust estate in excess of twenty-five thousand dollars in gold annually, in order to provide for any possible future deficiency in such net income, or to apply to make up any deficiency of said net income below the said annual sum of twenty-five thousand dollars in gold any portion of the capital of the said trust estate ; " and also from that part of said judgment which provides as follows : · " And it is further adjudged, in answer to the question of construction of the will of said Lorillard Spencer, deceased, presented by the complaint herein, in respect to the present ownership of the irregular tract of land situated between One Hundred and Fifty-ninth street, the extension of the centre line of One Hundred and Fifty-eighth street, the Croton aqueduct and St. Nicholas avenue ; and, also, the two lots of land situated in the village of West Farms, in the county of Westchester and State of New York, both of which parcels of land are mentioned in the said referee's report ; that the title to, and ownership of, each and all of said parcels of land is now vested in equal undivided one-fourth shares in the plaintiffs William Augustus Spencer and Charles G. Spencer, individually ; the plaintiffs William Augustus Spencer, Charles G. Spencer and Wolcott G. Lane, as trustees under the will of said Lorillard Spencer, deceased, for the benefit of Eleanora L. S. Cenci and remaindermen, and the said William Augustus Spencer, Charles G. Spencer and Wolcott G. Lane, as trustees under the will of said Lorillard Spencer, deceased, for the benefit of Lorillard Spencer and Caroline S. Spencer, his wife, and remaindermen ; that the said parcels of land are subject to the execution by the plaintiffs William Augustus Spencer and Charles G. Spencer, as surviving executors of the will of said Lorillard Spencer, deceased, of the

powers of sale and allotment by said will given to the executors thereof, and that said surviving executors have also power and authority to collect and receive any award or compensation that may be made for the taking of, or for damages to, any real property of said estate taken, or which may hereafter be taken, for public use ; " also from that part of said judgment which provides as follows : " And it is further adjudged that, out of the capital and income belonging to the estate of the said Lorillard Spencer, deceased, remaining in the hands of the plaintiffs William Augustus Spencer and Charles G. Spencer, as surviving executors of said will, the said plaintiffs William Augustus Spencer and Charles G. Spencer pay to the defendant J. Frederic Kernochan, as administrator of the goods, chattels and credits which were of James P. Kernochan, deceased, the amount of commissions upon capital and income of the estate of said Lorillard Spencer, deceased, to which he is entitled, as hereinbefore adjudged, and thereupon divide the capital and income then remaining in their hands into four equal shares, and pay and deliver one of such equal shares to the plaintiff William Augustus Spencer, individually ; one other of such shares to the plaintiff Charles G. Spencer, individually ; one other of such shares to the plaintiffs William Augustus Spencer, Charles G. Spencer and Wolcott G. Lane, as trustees under the will of said Lorillard Spencer, deceased, for the benefit of Eleanora L. S. Cenci and remaindermen, and the remaining one of such shares to the plaintiffs William Augustus Spencer, Charles G. Spencer and Wolcott G. Lane, as trustees under the will of said Lorillard Spencer, deceased, for the benefit of Lorillard Spencer and Caroline S. Spencer, his wife, and remaindermen."

Also an appeal by the defendant J. Frederic Kernochan, as administrator, etc., of James P. Kernochan, deceased, from so much of said judgment as adjudges " that the said James P. Kernochan became and his estate is equitably estopped from claiming any commissions upon income of the said several trust estates during each complete fiscal year of his service as trustee, and that the said James P. Kernochan, as administrator of the goods, chattels and credits which were of said James P. Kernochan, deceased, is not entitled to commissions, as for paying out so much of the capital of the trust estate held for the benefit of Lorillard Spencer and Caroline S. Spencer, his wife, and remaindermen, as was expended by the

trustees thereof in the erection of a new building upon the lots of land known by the street numbers 129, 131 and 133 Worth street in the city of New York."

This appeal was transferred from the first department to the second department.

*J. Frederic Kernochan,* for himself, as administrator of James P. Kernochan, appellant.

*John E. Parsons,* for Sarah Griswold Spencer, appellant and respondent.

*John L. Cadwalader,* for Lorillard Spencer and another, respondents.

*Howard C. Tracy,* for plaintiffs, respondents.

*J. Mayhew Wainwright,* for guardian *ad litem,* respondent.

*Henry H. Man,* for Eleanora L. S. Cenci, respondent.

CULLEN, J.:

This action was brought by the trustees under the will of Lorillard Spencer, deceased, for a construction of certain parts of said will and for an accounting. The only questions raised on this appeal are the rights of Sarah G. Spencer, the widow of the testator, under the trust created in her favor, and the claim of J. Frederic Kernochan, as administrator of James P. Kernochan, a deceased trustee under the will, to commissions.

The trust in favor of Mrs. Spencer was created by the following clause of the will: "*Second.* If my beloved wife, Sarah Griswold Spencer, survives me, I direct and empower my said executors forthwith, upon my decease, to set apart a certain portion of my real estate which shall be amply sufficient, in their judgment, to yield at all times a yearly net income of twenty-five thousand ($25,000) dollars in gold, which said portion I hereby give and devise to my said executors, *in trust,* however, to let, lease, manage and improve and receive the rents, issues and profits thereof, and to pay the net income thereof up to twenty-five thousand dollars ($25,000) per annum in gold, or its equivalent, to my said beloved wife during her life in equal quarterly payments against her receipt in duplicate,

and the balance, if any, of said net income to the persons, share and share alike, *per stirpes* and not *per capita*, who shall, during her life, be presumptively entitled to take the portion so held in trust, on expiration of said trust, as hereinafter in this section provided. And I declare that the provision in this section made for my beloved wife is intended to be in lieu and bar of all dower and thirds, and all other claims on her part, against my estate." Under this instruction the executors set apart certain real property of the testator which they deemed reasonably certain to produce at all times an annual income in excess of $25,000. The testator died in January, 1858, and the real estate was set aside for the trust in favor of the widow in November of that year. During the first five or six years the trust estate produced a net annual income not only sufficient to pay the widow's annuity of $25,000, but to create in addition thereto an annual surplus of about $5,000. During the years ending May 1, 1896, and May 1, 1897, the net income was insufficient to pay the widow's annuity, the aggregate deficiency during those two years being about $2,000. At the commencement of the action the trustees had divided all of the surplus income among the parties entitled thereto, except the sum of about $4,000 which they had on hand. The widow claimed before the referee that the trustees should be directed to retain any surplus of income that they might receive for the purpose of applying the same to making good any deficiency of income that might thereafter arise; and she also claimed that her annuity should be made good, if necessary, out of the principal or *corpus* of the trust estate. Both these claims the referee decided adversely to the widow.

It goes without saying that the provision made to a widow in lieu of dower is to be construed most favorably to her. Such a provision is not a mere gratuity, nor only dependent on moral claims for its support. It is given for a valid consideration, the release of dower. In the present case, too, it is apparent that the dominant intention of the testator was that the widow should receive $25,000 in gold annually. Therefore, the court, to carry out the intention of the testator and the rule of law, should construe this provision of the will beneficially to the widow so far as possible. But while we may resolve every doubtful question or ambiguous expression in favor of the widow, there is a limit beyond which

we cannot go. We cannot make a new will for the testator, even if we believe that had he foreseen the contingency which has arisen he would have changed his testamentary dispositions, nor can we pervert the meaning of the plain language of his will. There is no ground on which we can hold that the provision in favor of the widow is a demonstrative legacy of $25,000 a year, and, therefore, the decision in *Pierrepont* v. *Edwards* (25 N. Y. 128) has no application here. The testator has not given his widow $25,000 a year at all. He has merely given her the net rents and profits of a trust estate up to the sum of $25,000 per annum. The will seems to have been very carefully drawn by some one who knew thoroughly the law of this State. Had the draftsman had the case of *Pierrepont* v. *Edwards* before him, and his effort been directed especially to take the present will without the rule of that case, we do not see how he could have adopted language better fitted for the purpose unless he had said bluntly "*Pierrepont* v. *Edwards* shall not apply to this will." In *Delaney* v. *Van Aulen* (84 N. Y. 16, 21), speaking of the question whether an annuity given out of the rents and profits could be paid out of the *corpus* of the estate Judge Folger said : " Indeed, it may now be said that there is no principal whatever involved in these cases, save to ascertain what is the testator's intention, and to carry that intention into effect." But it must be remembered that in that case the gift was of an annuity and the executors were directed to pay the legatee a specific sum per year. In this case, though we in our previous discussion have used the term annuity as a matter of convenience, there is in fact no annuity, but a gift of rents and profits up to a specified sum. This seems so plain to us as to forbid elaboration, and we are of opinion that the decision of the learned referee in this respect was correct.

The determination of the other question, as to the right or duty of the trustees to retain the surplus of good years to guard against a deficiency in the income of bad years, is involved in more doubt. The direction of the will is not to pay the annual rents and profits of each year up to the sum of $25,000 to the widow, but to pay her the net income up to $25,000 a year during her life, payment to be made quarterly. The intent of the testator was that during her life

the widow should receive in the aggregate an amount equal to the multiple of $25,000 by the number of years she might live, so far as the rents and profits of the trust estate should produce that sum. In our opinion the terms of the will itself will justify this interpretation; and even if the interpretation be doubtful, the doubt should, under the rule already stated, be resolved in favor of the widow. We do not look upon the direction to divide the surplus among the persons presumptively entitled to the *corpus* of the trust estate on the expiration of the trust as evidencing any intent on the part of the testator to make such persons the special objects of his bounty. The provision of the will disposes of the surplus in exactly the same manner as the statute would have disposed of it had there been no such provision in the will. Its terms are borrowed from the statute, and its insertion was doubtless the mere desire of a careful lawyer to avoid even the appearance of intestacy. We think it clear that in case of deficiency in any year, such deficiency should be made good out of the surplus of succeeding years. (*Stewart* v. *Chambers*, 2 Sandf. Ch. 382; *Cochrane* v. *Walker*, 4 Dem. 164; *Matter of Chauncey*, 119 N. Y. 77.) The learned counsel for the widow contends that the principle of the cases cited, that the surplus of one year can be applied to the deficiency of a preceding year, logically requires or justifies the retention of such surplus as security against deficiencies that may occur in the future. If the right to retain the surplus depends solely on the will of the testator, we are not prepared to deny the correctness of this proposition, at least within limits. But we are here met with the statutory law of this State on the subject of accumulations. All directions for accumulations of rents and profits of real property are void, except during the minority of an infant and for his benefit. (Real Prop. Law [Laws of 1896, chap. 547], § 51.) In *Phelps' Executor* v. *Pond* (23 N. Y. 69) the testator placed the bulk of his estate in trust, and gave legacies payable in the future in such a manner that it was apparent that he anticipated the payment of those legacies out of the income. It was held that the executors could not retain or accumulate surplus income for the purpose of paying those legacies, but that such surplus every year must be distributed among the persons entitled to it under the statute. We assume that there is a limit beyond which the doctrine forbidding accumulations cannot be carried. We do not suppose that

the very day income is received it must be paid over to, or distributed among, the beneficiaries, and that no amount can be retained for any time, however short, with which to pay a charge certain to accrue in the immediate future. In this city taxes are payable toward the end of the year and they always equal a large portion of the rent of real estate. Any prudent trustee would retain a certain part of the income received during the early portion of the year to meet the charge that was sure to come at its end. The same is true of repairs; the cost of a repair which it was reasonably certain would become necessary in a short time might well be apportioned over some period of time as depreciation of the property, and a fund might be accumulated to defray the cost when it would be incurred. Some discretion must be left to the trustee in such matters, and his action, fairly taken in good faith in the retention of rents for the purposes indicated, would not be held to create accumulations against the statute. But no such case is presented here. The evidence taken by the referee is not before us on this appeal, the appeal having been taken on the judgment roll. The only question we have before us on this record is the broad one, whether the trustees have the right to retain present surplus against the possibility of future deficiency. Under the statute and the authority of the *Phelps* case, the trustees could not retain and accumulate the income of the present year to pay a legacy of $25,000 to the widow ten years hence. We cannot see that they have any greater right to retain the surplus to meet a possible deficiency in such a legacy after the application of the income of that year.

The facts relating to the claim of the late Mr. Kernochan for commissions are briefly these: Annually he, with his associates, the other trustees, rendered to the beneficiaries an account of the incomes of their respective trusts for the year, and paid over to them the whole net income as it appeared by those accounts. The learned referee allowed the estate of Mr. Kernochan one-half commissions on the personalty included in the *corpus* of the trusts, but denied to him commissions on the annual income received and paid over except during the portion of the year in which Mr. Kernochan died. He held that the deceased trustee, by failing to retain his commissions and by paying over the whole income to his *cestui que trust*, had waived all claims to commissions on that income. The learned

counsel for the estate of the deceased trustee contends that this ruling is erroneous. He asserts that the original rule was that trustees could only take their commissions when they were fixed by judicial decree (*Wheelright* v. *Wheelright*, 2 Redf. 501); that though this rule has been relaxed in favor of the trustee so that where he annually accounts to his *cestui que trust* for the income of the year and pays it over he may take commissions without judicial order, still he has the right to await the settlement of his accounts and the judgment of the court before he makes his claim for commissions. We entirely agree to this proposition, but it does not help this appellant. The difficulty in his case is not that he did not take his commissions each year from the income, but that he paid over the whole income to the beneficiary. He was not put to the alternative of either taking his commissions or paying their amount to the beneficiary; there was a third course open to him — that was to retain the amount of his commissions in the trust. The income was the sole fund from which the trustee's commissions were payable; he could not by paying over to the *cestui que trust* the amount of the commissions in one year create a charge or lien on the income of the beneficiary in future years. The interest of the beneficiary in the rents and profits was, by the express terms of the statute, incapable of anticipation or assignment; and neither the acts of the trustees or of the *cestui que trust* could avoid this provision. We do not mean to say that this rule is to be carried so far as to exclude the possibility of any unintentional error resulting in an overpayment in one year being corrected in the next. But in this case the trustees have for nine successive years rendered their accounts to the beneficiaries without claim for commissions, and have paid over the whole net income. By this course they have lost the right to commissions. (*Hancox* v. *Meeker*, 95 N. Y. 528.)

A further claim is made by the counsel for the deceased trustee that he is entitled to full commissions on some $60,000 of personalty which was applied to the improvement of the real estate in the trust. He concedes the general rule that a mere change in the investment of the *corpus* of the trust estate is not a paying out so as to entitle the trustee to commission on such investment. He contends, however, that a different rule applies here, because the personalty has been applied to the improvement of the real estate. He argues

that as the real estate will go to the remaindermen under the will, the trustees can get no commissions on the principal or *corpus* of the estate at the expiration of the trust term; and that, therefore, they must be entitled to such commissions when the personalty was applied to the realty, or forever lose them. We are not willing to concede that, at the expiration of the trust term, the trustees might not have a lien on the real estate for their commissions on the personalty that had gone into the real estate. Certainly they would be entitled to take such commissions from any other personalty belonging to the *corpus* of the trust. However that may be, in this case the trustees are empowered to make sale of the realty. If they should do so, at the end of the trust they would receive full commissions on the sum realized on the sale, which would include the amount of any improvements which had been made on the property from the personalty. We think, therefore, that in this case at least the trustees were not entitled to this commission.

The judgment appealed from should be affirmed, with costs to all parties to be paid out of the estate.

All concurred.

Judgment affirmed, with costs to all parties payable out of the estate.