THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Executor of WILLIAM H. NELSON, Deceased, et al., Respondents.

(Argued June 3, 1935; decided July 11, 1935.)

*William D. Mitchell, Clinton C. Swan* and *Frank S. Stevens, Jr.,* for appellants. The provisions of the will show clearly that the testator intended to give to his widow personal property (other than cash or evidences of indebtedness) located or ordinarily kept at Mount Kisco, and thereby to confirm to her the title to the dwelling's contents. (*Kinkele* v. *Wilson,* 151 N. Y. 269; *Matter of Reynolds,* 124 N. Y. 388; *Matter of Pulis,* 220 N. Y. 196; *Matter of Martin,* 255 N. Y. 248; *Matter of Rooker,* 248 N. Y. 361; *Salter* v. *Drowne,* 205 N. Y. 204; *Matter of Bump,* 234 N. Y. 60.)

*C. W. Ticknor* for respondents. It is the duty of a court in construing a will to discover the dominant purpose of the testator if it is disclosed by the will and the testamentary scheme for accomplishing such purpose, and this should form the basis for the construction of the will. (*Matter of White,* 125 N. Y. 544; *Eidt* v. *Eidt,* 203 N. Y. 325.) The wife was given all personal property, except whatever cash or evidences of indebtedness were found on the premises at Mount Kisco when testator died. (*Matter of Reynolds,* 124 N. Y. 388.)

LEHMAN, J. The testator resided in Mount Kisco. After his marriage in 1907 he transferred his home there to his wife. By his last will and testament, executed in 1925, he provided: " I give and bequeath to my wife, Etta E. Nelson, all personal property other than cash or evidences of indebtedness which I may have at my decease, located or ordinarily kept on the premises at Mount Kisco, N. Y., where I now reside." All the residue

of his property, " both real and personal," the testator devised and bequeathed to his executors in trust to pay the rents, income and profits thereof to his wife so long as she lived and remained unmarried.

The testator's will was probated after his death in 1933. The executors' accounts show that the testator left no real property. The personal property which came into the possession of the executors consists of stocks and bonds, kept by the testator in a safe deposit box in New York city, of the market value of over $400,000; a small amount of money in bank, and mortgages of the face value of $68,000 which the testator customarily kept at his home in Mount Kisco. The only tangible personal property of the testator kept at the home in Mount Kisco were five race horses, valued at $2,900.

The executors ask instruction as to whether the stocks, bonds and cash, not kept at Mount Kisco, pass to the testator's wife under the bequest of " all personal property other than cash or evidences of indebtedness which I may have at my decease, located or ordinarily kept on the premises at Mount Kisco, N. Y., where I now reside." We are told that through that clause the testator intended to bequeath to his wife absolutely all his stock and bonds and other personal property, customarily kept in his safe deposit box or bank in the city of New York, and that he intended that the residue of his estate, to be held in trust, should include no personal property of any kind except the cash and evidences of indebtedness " located or ordinarily kept " at the testator's residence in Mount Kisco. If that was the intention of the testator, he used language which was admirably calculated to veil his intention.

It seems evident to us that the testator intended to give to his wife the tangible personal property located at their common residence and the income of all other property. He used apt language to express that intention. He customarily kept at his residence some mortgages. The

language of the will makes entirely clear that such mortgages, together with any cash that he might have there at his death, should not pass to the wife. The gift to her of "all personal property other than cash or evidences of indebtedness which I may have at my decease" is followed by the limitation, "located or ordinarily kept on the premises at Mount Kisco, N. Y., where I now reside." The limitation is separated from the gift by a comma and qualifies the entire gift. The gift includes only personal property located at the residence in Mount Kisco.

The courts will read a will as a whole in order to discern the intention of a testator. When that intention is discovered, the courts will not thwart it by strict and grammatical construction of particular clauses. Punctuation may, it has been said, be disregarded and phrases transposed in order to give effect to the intention of the testator. None the less, the intention must be revealed by the language of the will. The words must be construed in order to find the sense in which they were used by the testator. They may not be perverted or disregarded in order to give effect to an intention which possibly the testator may have had but which is not revealed by the language used in the will.

Here we find language which, construed either grammatically or in natural sense, limits the gift to the wife to property located at the testator's residence in Mount Kisco and excepts from the gift cash or evidences of indebtedness. Then we find a gift of the residue of the testator's property in trust so that the wife may enjoy the income during her life, or so long as she remains a widow. Only by labored and unnatural construction of the language of the will, could it be found to mean that the testator intended an absolute gift of all his personal property, wherever situated, with the exception only of cash or evidences of indebtedness located at the residence in Mount Kisco, and thus excluded from the trust of the residue all securities not located there.

It is urged, however, that such an intention, implied though not expressed, may be read into the disposition made by the testator of the remainder of the trust fund after the death of the testator's wife. The testator's next of kin were two nephews. They were unmarried when the will was made. The testator apparently felt no intimate personal affection for his nephews but desired that one of them should name a son after him. He provided in his will that if at the time of death or remarriage of his wife, his older nephew, Harry Nelson, should have a " son of lawful issue, named William H. Nelson " then living, the remainder of the trust fund should go to " the said William H. Nelson." If Harry Nelson did not then have a son so named, but the younger nephew, George Nelson, did have a son named William H. Nelson, then the remainder should go to the " said William H. Nelson." If neither nephew had a son so named, the remainder was to be distributed amongst those who would at that time be the testator's next of kin.

Perhaps the testator was not greatly interested in the disposition of the remainder of his property unless it could be taken by one of his own blood, bearing his name. Perhaps the testator could have exercised a stronger pressure upon his nephews to name a son after him by different provision in his will, or by offer made to either during his life. All that is conjecture. The will itself in unambiguous terms makes absolute gift to the wife only of personal property located at the testator's home. The residue, including all personal property located or kept elsewhere, becomes part of the trust fund.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, without costs, and the matter remitted to Surrogate's Court for a decree in accordance with this opinion. (See 268 N. Y. 636.)

CRANE, Ch. J., O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur; HUBBS, J., not sitting.

Ordered accordingly.