In the Matter of the Petition of FRANK A. MOLLER to Modify the Order of This Court Relating to the Last Will and Testament of CHRISTIAN H. MOLLER, and to Secure a Construction of Said Will and for an Accounting by the Trustee.

GERTRUDE MOLLER and Others, Infants, by FREDERICK A. KECK, Their Guardian ad Litem, Appellants; FRANK A. MOLLER, Respondent.

Second Department, December 6, 1935.

*Frederick A. Keck*, special guardian, appellant.

*Charles H. Kelby*, for the respondent.

DAVIS, J. The order purports to " modify and amend " an order granted at Special Term nearly seven years before. In the part from which an appeal is taken, it revokes and annuls provisions in the earlier order affecting the contingent rights in remainder of infants, given in the will of Christian H. Moller, by making a reapportionment of the expenditures made by the executor in improving real property, as directed by the earlier order, and in respect to the income payable from the property. It further provides for an appraisal of the property and for an accounting. There is no appeal from that part of the order holding that the trustee is empowered to sell the real property.

. The will of Christian Henry Moller was executed June 5, 1912. He died May 31, 1915. He was the owner of several parcels of land in Brooklyn at the time he made his will, and died seized of such property.

In his will he gave a life estate to his sister in one of these parcels, providing that on her death the same should become a part of his residuary estate. This sister died on May 13, 1931. Practically all the remainder of his property he gave to his executor in trust, to be held during the lives of his wife and son, who were to receive the net income in a proportion one-third to the wife and two-thirds to the son. If the son predeceased the wife, leaving issue, the income theretofore payable to him was payable to his issue. If the son predeceased the wife, being without issue, then the whole income was payable to the wife. If the son had issue, the remainder

went to such issue at the termination of the life estates. If the son had no issue, then the principal sum was payable to collaterals at the termination of the life estates. Both beneficiaries are living and the son has issue — a daughter.

The will empowered the executor and trustee to sell certain parcels of real property if in its judgment it was to the benefit of the estate; but " All my other real property shall be held by my Trustee during the period of the trust herein created."

The amount of the estate at the time of the testator's death is not stated. From certain extracts from accountings and other statements in the record, the total estate amounted to from $312,000 to $314,000. It appears that at one time the personal property amounted to $98,000.

The will, of course, speaks as of the date of the testator's death, but the intent of the testator must be gathered from the date when the will was written. It appears that the real property consisted of houses or apartment houses which were well rented and produced a good income. Evidently the testator had in mind that certain of this property should not be sold by his executor, but should remain as part of the trust fund so that a good income might be produced for the beneficiaries. However, he could not foresee the changes that would occur between 1912 and 1928. In the latter year this property had become obsolescent, and evidently it was difficult to rent it advantageously. So the executor and trustee applied to the court for authority to make certain improvements of these properties. It is admitted that all the necessary parties had notice of the application. The matter was referred to a referee, an architect furnished plans, estimates were made, and it was decided that the executor and trustee should be authorized to expend $40,000 in improvements, which consisted, not only of some structural improvements, but the installation of a hot water system and bathrooms. These changes, it was anticipated, would greatly benefit the properties and increase their rental value, and were necessary in view of the condition of the buildings.

The referee made his report and the order was made on October 5, 1928, whereby the executor, now acting as trustee, reported and accounted for the expenditures. The order recites that it was made on due notice and on affidavits of service presented. There was no opposition and an order was made confirming the report of the referee and approving the account of the trustee. The order directed, among other things, that the expense, not to exceed $40,000, for making the alterations and changes was to be advanced from the principal of the personal property of the trust, which was to be paid back or restored to the principal out of income

therefrom "in twenty consecutive annual payments, commencing in the year 1929, of an annual amount representing one-twentieth of the amount expended for such alterations, improvements and changes, unless the trust created for the benefit of decedent's widow, Carrie L. Moller, and for decedent's son, Frank A. Moller, terminates by reason of their deaths in the meantime."

The twenty-year period was well within the expectancy of one or both of the beneficiaries. We may assume (for the record does not disclose the evidence or the report of the referee) that it was determined that these improvements would naturally endure during the expectancy of the beneficiaries and that the buildings might then again become obsolescent. At any rate, at that time there was no objection on the part of the beneficiaries that a portion of this expenditure should be charged against annual income. At this time the son and the widow were receiving about $16,000 and $8,000, respectively, in net income from the trust. No doubt they were then willing to have $2,000 a year deducted from the income to pay for these improvements, on the theory that it would keep up the return on the investment — at least they made no objection; and for six years the deduction was made without any objection on their part and apparently with their acquiescence and assent.

The period of depression followed shortly after these improvements were made, and with it came a reduction in the income from this trust estate. It is said that the income of the son and the widow now amounts only to $1,200 and $600 a year, respectively. They do not explain what has become of the personal estate, which, if well administered, would produce more than that amount; nor why it is that income has decreased from other real estate or the proceeds thereof arising on any sale. They seek in this proceeding to have a readjustment of the expenditure, and it has been granted them. Not only has there been an adjustment as to the future, but they are to have returned to them the $12,000 that has already been paid out of their income on account of these improvements; and, as it seems, the property is to be sold to make such adjustments possible. The theory on which the petitioner applied for this relief is that he did not understand that such extensive improvements would be made, and that he was "lulled into a sense of security" by representations of the trustees as to the necessity of the improvements and the probably greater return in rentals. Yet for nearly seven years he acquiesced in the order and the acts performed as it directed.

We disregard the fact that the beneficiaries sought unsuccessfully substantially the same relief in a proceeding for accounting in the Surrogate's Court.

The rights of the various parties became fixed by the order entered October 5, 1928, with their assent and acquiescence. It has been acted on. No power remains in another court at Special Term to modify and amend that order. (*Herpe* v. *Herpe*, 225 N. Y. 323; *Bohlen* v. *M. E. R. Co.*, 121 id. 546; *Chester* v. *Buffalo Car Mfg. Co.*, 183 id. 425, 439; *Clancy* v. *N. Y., N. H. & H. R. R. Co.*, 226 id. 213; *Corr* v. *Hoffman*, 256 id. 254, 268; *Jacquin* v. *Syracuse Auto R. & T. Corp.*, 263 id. 53, 56.) There was no mistake or irregularity in the original order; nor is there any dispensing power in the court to readjust rights once determined, on· the basis of existing hardship or of assumed equities. Undoubtedly there has been loss of value in the property of this estate; and that loss will be shared both by the beneficiaries of the trust and by the remaindermen. (*Matter of Gilford*, 155 Misc. 339, 342, 343; *Matter of Rowland*, Id. 826, 832.)

The theory upon which the order was granted seems to have been that the income given to the beneficiaries constituted annuities on the basis of the doctrine in *Pierrepont* v. *Edwards* (25 N. Y. 128). There was no annuity here. It was a simple trust, with the net income payable to the beneficiaries during their lives. (*Matter of Dewey*, 153 N. Y. 63.) The court cannot make a new will in favor of the widow and son. (*Spencer* v. *Spencer*, 38 App. Div. 403; *Matter of Rowland, supra.*)

It is unnecessary to consider the subject of apportionment further at this time. It is evident that it is proposed to sell this property which is not sufficiently productive; and when it is sold it may well be that the annual payments for improvements will naturally cease. The order of October 5, 1928, may hereafter be interpreted as contemplating the termination of the annual payments by a sale of the property, as well as by the death of the beneficiaries. We leave these questions to be adjusted in the Surrogate's Court after the property has been sold and an accounting is had, or other eventualities occur.

The order, in so far as an appeal is taken therefrom, should be reversed on the law and the facts, with ten dollars costs and disbursements to the appellants, payable out of the estate, and the motion to modify and amend the order of October 5, 1928, in the respects indicated, denied.

LAZANSKY, P. J., YOUNG, HAGARTY and CARSWELL, JJ., concur.

Order, in so far as an appeal is taken therefrom, reversed on the law and the facts, with ten dollars costs and disbursements to appellants, payable out of the estate, and the motion to modify and amend the order of October 5, 1928, in the respects indicated, denied.