BANKERS TRUST COMPANY, as Substituted Trustee under an Agreement of Separation and Trust Dated December 28, 1927, Made by RUBY C. WILLIS and PIERRE L. WILLIS Whereunder FRANK H. TWYEFFORT Originally Was Named Trustee, Plaintiff-Respondent, v. RUBY C. WILLIS, CONSTANCE C. WILLIS, ROBERT Y. CLARK, as Guardian ad Litem for PIERRE L. WILLIS, JR., CONSTANCE C. WILLIS, JR., Infants, etc., MARY A. CUTTER and WILLIAM F. CUTTER, Defendants-Respondents, and PIERRE L. WILLIS, Appellant.— In an action brought by a trustee for construction of the terms of a separation and trust agreement, and for

instructions thereunder, and for judicial settlement of the trustee's accounts, judgment modified in accordance with this decision, and as so modified affirmed, in so far as an appeal is taken therefrom, with costs and disbursements to plaintiff-respondent. All costs, disbursements and allowances are to be paid out of income now in the hands of the trustee. Defendants Constance C. Willis, Pierre L. Willis, Jr., Constance C. Willis, Jr., Mary A. Cutter and William F. Cutter have no interest in the trust fund and are not allowed costs. That part of the judgment fixing the allowance of the guardian *ad litem* is modified by reducing the amount to $150. Defendants Pierre L. Willis and Ruby C. Willis, husband and wife, entered into a separation and trust agreement in December, 1927. All of the husband's property, both real and personal, was placed in trust, with directions to pay to the wife, for maintenance and support, $3,000 annually from the income of the property, after deduction of expenses of the trust. The remaining income, if any, was to be paid to the husband. In addition, the wife was given certain other·benefits. The wife accepted the provisions of the agreement in full settlement and release of all claims for support or otherwise. It was further provided that upon the death or remarriage of the wife the reversion of the trust property, with the exception of a one-half interest in the residence property of the wife, was to be reconveyed to the husband. Thereafter payments were made to the wife at the agreed rate out of net income from the property placed in trust, and surpluses were paid to the husband. In 1932 and thereafter the income from the property placed in trust was greatly reduced, and, in addition, the trustee was required to make large outlays in connection with foreclosure proceedings, etc., for the purpose of protecting certain assets of the trust. Payments to the wife and husband stopped, and with the exception of a $500 payment to the wife in 1934, she has received nothing since 1932. In 1934 the property in trust began to improve in earnings. The trustee has brought the action in order to receive the court's instructions in the main as to the proper allocation between principal and income accounts of the sums expended. The learned referee has adjudged that all the expenses heretofore incurred in connection with the real property be charged to principal, and that all present and future carrying charges on the real property remaining in the trust or hereafter acquired likewise be charged to principal. The authorities cited relate to testamentary trusts and not to *inter vivos* contracts and are of but slight aid to the court, and we must discover the intentions of the parties from the agreement and from such extrinsic circumstances as are properly taken into view in such a case. (*Delaney* v. *Van Aulen*, 84 N. Y. 16, 22.) Accordingly we find and decide as follows: (1) The primary object of the agreement is to provide maintenance and support for the wife; (2) payments to her are solely out of net income from the property placed in trust; (3) so far as consistent with these intentions, the principal amount of the property placed in trust is to be kept intact. We have viewed the real property as requiring separate treatment in the accounts, dependent upon whether it is productive or unproductive. Obviously, upon the failure of income the maintenance of unproductive property must be out of principal. But the principal may be reimbursed out of future income, after the primary objects of the agreement have been accomplished. This is a principle long in use, and is applicable where the intention is to keep the body of the trust intact so far as changing conditions permit. (See *Matter of Jackson*, 258 N. Y. 281; *Matter of Chapal*, 269 id. 464.) With respect to the unproductive real property which was

abandoned by consent and a deed thereto given to the husband for a consideration of one dollar, there is no necessity, under the terms of the agreement, to reimburse the principal for the expenses heretofore incurred in connection with this property. The accounts with respect to this property, in so far as they charge these amounts to principal, are correct. The accounts must be corrected, however, by charging to principal the amounts which have heretofore been charged to income. This refers to the $1,980 item in Schedule D and the $1,796.37 item in Schedule DD. With respect to the productive real property referred to as the Country Club Beach property, the same rule is applicable during the period in which it was unproductive of income; and its expenses must be charged to principal. This has already been done in the accounts except with respect to some very small items, which should be corrected. With respect to carrying charges on real property now in the hands of the trustee or which may come into its hands by reason of any change in the form of the investments (referred to in paragraphs 1 [c] and 6 of the judgment), these charges are provided for in the agreement as expenses of the trust which must be met out of the first accumulations of income. It is improper to charge these expenses on productive property to principal; and under the terms of the agreement they must take precedence over payments to the wife. With respect to arrears of payments to the wife, there is no provision in the agreement requiring their abatement during the periods of failure of income; and the wife is entitled to whatever sums that have accrued and have not been paid at the agreed rate, no interest being chargeable on the arrears. Any payments to her, however, can only be out of net income from the whole property placed in trust after the adjustments have been made as aforesaid. For the purpose of clarity, the operation of the income account is summarized as follows: Out of all income on hand after the adjustments as aforesaid have been made and all income thereafter coming into his hands, the trustee is directed to pay, *first*, the current expenses of the trust, which include the carrying charges on productive real property; *second*, payments to the wife until all arrears have been paid, without interest; *third*, payments to the trust by way of reimbursement for expenses in connection with the Country Club Beach property, heretofore charged to principal; *fourth*, payments to the husband. We are not impressed with the argument that the natural and legal obligation of a husband to support his wife is a justification for violation of the terms of the agreement here in suit. That such obligation exists is elementary and the law provides adequate remedies for its enforcement. We have attempted to make a reasonable and practical construction of the agreement within the intention of the parties, but the court cannot make a new agreement. Findings of fact and conclusions of law inconsistent with this decision are reversed and new findings and conclusions will be made. Carswell, Davis and Adel, JJ., concur; Lazansky, P. J., and Taylor, J., dissent, being of the opinion that the contract was not ambiguous and that it clearly expresses the settlor's intent from which there may be no variance. Settle order on notice. [See *ante*, p. 750.]