In the Matter of the Accounting of LANGDON P. MARVIN et al., as
Trustees under the Will of GEORGE A. FULLER, Deceased.

Surrogate's Court, New York County, August 6, 1948.

*Emmet, Marvin & Martin* for trustees, petitioners.

*Craigh Leonard* and *John A. Brough* for Katherine B. Pynchon, respondent and cross petitioner.

*Louis B. Warren, Harold F. Lewis* and *Frederick T. Shea* for Dorothy C. Tucker, respondent.

COLLINS, S. The accounting trustees ask instructions as to whether principal of the trust fund created under the fourth paragraph of the will is payable to the objectant, Dorothy C. Tucker, to make up a deficiency in income. The objectant contends that she is entitled to receive from the trust the sum of $500 a month and that in the event the income of the trust is insufficient to produce that amount, she is entitled to be paid the deficiency from principal. The widow of the testator, who is presently entitled to any surplus income of the trust as well as an interest in the remainder, maintains that the objectant is entitled to payments only out of the net income of the trust and that the trustees have no authority to pay to her any part of the principal.

In 1925, the testator, being separated from his then wife — the objectant — entered into a separation agreement with her under which he agreed to pay to her for her maintenance and support in equal monthly installments the sum of $15,000 a year,

or in the event of her remarriage, the sum of $6,000 a year. The separation agreement provided that the obligation on the part of the husband to make the annual payments should survive his death and be binding upon his legal representatives. It further provided that the husband " may by trust indenture, will or otherwise, create or authorize the creation of a trust, or his legal representatives may within one year after his death in their discretion create such a trust, in each case for the life of the Wife and to consist of cash or securities sufficient to produce the income herein provided for (that is, of Fifteen Thousand Dollars ($15,000.) or of Six Thousand Dollars ($6,000.) a year as the case may be). Any securities so deposited in said trust shall consist of corporate or governmental bonds which have regularly made all interest payments for a period of at least five years and/or of preferred stocks of corporations which have regularly paid all dividends for a period of at least five years; and such trust shall have such other terms and provisions not inconsistent herewith, as the Husband or his said legal representatives may direct, and upon the setting up of such trust fund the balance of the estate of the Husband shall be relieved of any further liability and obligation hereunder, other than to make the accrued payment to the date of the setting up of the trust fund. Nothing in this paragraph contained shall however be construed as a waiver or in derogation of the Wife's rights in the estate of the Husband in the event that no such trust fund shall be set up."

The testator and the objectant were subsequently divorced and the objectant thereafter remarried. The testator married the respondent, Katherine B. Pynchon, who survived him as his widow. He died on September 5, 1931, leaving a will which had been executed on April 27th of that year. The fourth paragraph reads as follows:

" Fourth: I give, devise and bequeath to my Trustees, hereinafter named, such sum of money or such securities or both as will, in the opinion of my Executors, be sufficient to yield and produce a net income of Six Thousand Dollars ($6,000) a year, in trust, nevertheless, to hold, manage, invest and reinvest said money or securities or both, or such moneys and securities as may from time to time constitute the principal of such trust fund, and to collect and receive the income therefrom, and, after the deduction of taxes and the lawful commissions and expenses of my Trustees, *to pay out of the net income of such trust fund* to Dorothy Caswell Tucker, my former wife, the sum of Five Hundred Dollars ($500) a month, on the first day of each month

in advance, so long as said Dorothy Caswell Tucker shall live, any surplus net income, after the payment of such monthly sums to said Dorothy Caswell Tucker, to be paid from year to year to my wife, formerly Katherine Vernon Brown, during her life, and after her death, to the person or persons, or to his, her or their executors, administrators, successors or assigns, in whom my residuary estate shall have vested as hereinafter provided; and, on the death of said Dorothy Caswell Tucker, *to pay and transfer the principal of said trust fund,* after the deduction of the lawful commissions and expenses of my Trustees, and I hereby give and bequeath the same, to said person or persons, or to his, her or their executors, administrators, successors or assigns, in whom my residuary estate shall have vested as hereinafter provided.

" I authorize my Executors, hereinafter named, in their discretion to pay over and transfer to my Trustees, hereinafter named, for this trust, either cash or securities or both, but any securities so transferred shall consist of corporate or governmental bonds on which all interest payments shall have been regularly made for a period of at least five (5) years, and/or of preferred stocks of corporations which have regularly paid all dividends thereon for a period of at least five (5) years, and I authorize and direct the Trustees of this trust to continue to hold such securities as may be transferred to them by my said Executors, to sell any or all of such securities, and to make such investments or reinvestments in similar securities as those hereinabove described.

"This trust is created pursuant to the provisions of an agreement between said Dorothy Caswell Tucker (therein described as Dorothy Caswell Fuller) and me, dated and executed on the 18th day of March, 1925, which provides that upon the setting up of such a trust fund, as hereinabove provided, the balance of my estate shall be relieved of any further liability and obligation under such Agreement, other than to make to said Dorothy Caswell Tucker the accrued payment to the date of the setting up of such trust fund, and I hereby direct that the monthly income hereinabove provided shall be paid to said Dorothy Caswell Tucker by my Executors up to the date of the setting up of this trust fund. *I direct that this trust, when set up and established, shall be and shall be accepted as in full settlement, release and discharge of any further liability and obligation whatsoever of maintenance, support or otherwise to said Dorothy Caswell Tucker under said Agreement,* or any subsequent agreement, or otherwise, and in lieu of any dower, and the balance of my prop-

erty and estate shall be relieved from any further obligation or liability, as aforesaid." (Italics supplied.)

The executors under the will of the testator delivered to the trustees cash and securities in an amount sufficient to set up the trust fund as directed by the will. On October 11, 1933, the objectant executed a release which recited the separation agreement, the terms of the will of the testator and the setting up of the trust and contained an express approval by respondent of the investments set forth in the schedule annexed to the receipt. In the release the respondent accepted '' said trust and said trust fund as in full settlement, release and discharge of any further liability and obligation whatsoever of maintenance, support or otherwise, to me under the aforesaid agreement, dated the 18th day of March, 1925, and/or under the aforesaid Last Will and Testament of said George Allon Fuller, deceased, and/or otherwise, and in lieu of any dower ''. The respondent released the balance of the property and estate of the testator and the executors under his will from any further liability and obligation whatsoever.

The trustees were able to pay to the respondent the sum of $500 a month up to January 1, 1947. In some of the years there was an excess income which was paid to the widow. Since January 1, 1947, the trustees have been able to pay from income only the sum of $425 a month. The objectant demanded that the deficiency of $75 a month be paid out of the principal of the trust. The trustees believe that they have no right to invade the principal for the benefit of the objectant and they declined to make any payments from principal. In this accounting proceeding they ask the court to advise them whether principal of the trust is payable to objectant to make up the deficiency of income.

The objectant contends that the terms of the will and the provisions of the separation agreement indicate an intention on the part of the testator to create an annuity of $6,000 a year to be paid from income to the extent that income was sufficient but to be paid in all events and from principal to the extent necessary to make good the deficiency of income. She argues that the agreement bound the testator to pay stipulated monthly sums and that the will was intended to fulfill the testator's obligations under the agreement. She contends that her status as a creditor under the agreement is sufficient to cause the testamentary provision in her favor to be construed as an annuity.

It is a primary rule of construction that when the wording of the will is clear and unambiguous the courts must carry out the intent of a testator as disclosed by the words of the will itself. (*Matter of Battell,* 286 N. Y. 97, 102; *Matter of Durand,* 250 N. Y. 45, 54; *Matter of Watson,* 262 N. Y. 284, 293.) " Processes of construction may not be resorted to for the purpose of reading into the trust deed an intention not expressed or legitimately to be implied from the language used when construed in the light of the surrounding circumstances. We are to search, not for the probable intention of the settlor merely, but for the intention which the trust deed itself, either expressly or by implication, declares. We are to ascertain the intention from the words used and give effect to the legal consequences to that intention when ascertained." (*Central Union Trust Co. v. Trimble,* 255 N. Y. 88, 93.) The " intention must be revealed by the language of the will. The words must be construed in order to find the sense in which they were used by the testator. They may not be perverted or disregarded in order to give effect to an intention which possibly the testator may have had but which is not revealed by the language used in the will." (*Matter of Nelson,* 268 N. Y. 255, 258; see, also, *Matter of Tamargo,* 220 N. Y. 225, 231.)

It is the will of the testator that the court is called upon to construe. Other instruments may throw some light on the language used in the will and when read in this reflected light words used in the will may take on a meaning they would not otherwise reveal by themselves. If there be ambiguity in the terms of the will the court must consider the surrounding relevant circumstances, including the terms of the separation agreement referred to in the will, for the purpose of ascertaining the intention of the testator as *manifested in his will.* But in all cases what the court must seek is the intent of the testator as disclosed in the will itself and not his intention and purpose at the time of the execution of some other instrument. The surrounding facts and circumstances cannot be used to contradict the express terms of the will or to supply an omission which cannot be fairly implied from the will itself. Resort to such extrinsic aids is permissible only when the will fails clearly to express the intention of the testator.

This court has recently had occasion to discuss at length in several decisions the distinction between a true common-law annuity and a gift of income. (*Matter of Brown,* 183 Misc. 470, FOLEY, S.; *Matter of Selig,* 49 N. Y. S. 2d 385, FOLEY, S.; *Matter of Hastings,* 183 Misc. 520, DELEHANTY, S.; *Matter of Mayer,*

49 N. Y. S. 2d 239, DELEHANTY, S.) The use of the term " annuity " is sometimes confusing because it is probably more often used in the popular sense of a fixed annual payment rather than in the strict technical sense, and perhaps for this reason the earlier cases drew the distinction in more precise terminology between " a demonstrative legacy " and a gift of income. (See *Matter of Chauncey,* 119 N. Y. 77, 80.) The cited cases review the authorities and restate the applicable rules. In each case the purpose of the testator is the paramount consideration and the sole question is whether he intended that payment to the beneficiary was to be made out of income only or whether, on the other hand, payment was to be made in all events and from principal to the extent necessary to make up any deficiency of income. The authorities have consistently stated the principle that no positive rule of ready application to every case can be laid down but that each case must depend upon the text of the will and of the extrinsic circumstances that may fairly be brought to bear in the question of intent. (*Pierrepont* v. *Edwards,* 25 N. Y. 128, 131; *Matter of Mayer, supra,* p. 243.)

In this will the testator directed his trustees to collect and receive the income of the trust and after the deduction of lawful expenses and charges " to pay *out of the net income* of such trust fund " the sum of $500 a month to the objectant. (Italics supplied.) He further directed that " any surplus net income, after the payment of such monthly sums to said Dorothy Caswell Tucker " be paid to his widow during her life. On the death of the objectant he directed distribution of " the principal of said trust fund ". Thus the testator has in the clearest terms directed that the stipulated monthly sum be paid to objectant only out of the net income of the trust. He has expressly disposed not of the principal of the trust *remaining* on the death of objectant but of " *the principal* of said trust fund ". The will may be read from beginning to end and there can be found nothing in its text which even by implication authorizes the payment of any amount from principal to the objectant.

Resort to the separation agreement fails to furnish any basis for implying in the will a direction to pay principal to the objectant. There is here not the case of a testator who was endeavoring to assure the maintenance and support of the nearest object of his bounty but rather a testator who was constrained by his contract to make provision for a former wife who was already remarried. It is to be presumed that he would give her all that his contract compelled him to give but there can be no assumption that he intended to give her any more. The con-

tract gave him permission to create a trust during the life of objectant. That he has done. The trust was to " consist of cash or securities sufficient to produce the income * * * provided for ", namely, $6,000 a year. The will directs that such a trust be erected and all parties were agreed at the time the trust was created that the assets were sufficient for that purpose. Thus far he has done exactly what he was required to do; no more and no less. The trust was to be constituted of securities of a particular character and again the will followed the directions of the agreement in this respect. The agreement further permitted the testator to incorporate in the trust instrument " such other terms and provisions not inconsistent herewith ". The testator obviously believed that the agreement authorized the inclusion of a direction for payment of the stipulated amount out of income only. The objectant evidently was of the same view for she accepted the trust " in full settlement, release and discharge of any further liability and obligation whatsoever of maintenance, support or otherwise, to me under the aforesaid agreement, dated the 18th day of March, 1925 ". Both parties thus appear to have been of the opinion that the provisions of the will were within the limits prescribed by the agreement. It is not for this court to say many years later that under its interpretation of the agreement the testator was required to give something more or that even if not so required he nevertheless intended to give her something more.

It is true that if there had been no trust fund created, the objectant would have had a claim for $6,000 a year against the estate. It is nevertheless also the fact that the creation of a trust fund had practical advantages for objectant over the necessity of enforcing her claims as a creditor. As the beneficiary of a trust fund constituted of sufficient assets of high quality, she had a position superior to that of a creditor who might be required continually to take steps to enforce her claim. It was a benefit which she freely chose when asked to make a choice. Under such circumstances the court may not reasonably assume that the will intended to give her every advantage she would have had as a creditor and in addition her rights as beneficiary of the trust fund.

If the separation agreement were to be interpreted as requiring that the income and principal of the proposed trust be paid to the objectant, the reason for all of the elaborate provisions in the agreement respecting the trust would be difficult to understand. The value of a trust such as was required by the agreement was substantially larger than the amount that would have

been necessary as a reserve for the unliquidated claim under section 207 of the Surrogate's Court Act. (See *Matter of Fuller,* 151 Misc. 387, 389.) The trust as actually set up produced for many years an income equal to or in excess of the periodic payment. The testator could have directed in his will for the setting aside of a sufficient reserve fund without express permission in the agreement, subject of course to the court's approval as to the adequacy of the reserve. The presence of the detailed provisions as to the constitution of the trust fund is indicative that the trust was not intended merely as a reserve to meet the periodic payments but rather as a fund the income of which was to be used to satisfy all the obligations of the testator.

It is thus apparent that when the will is read in the light of the separation agreement there is nothing in the circumstances that would warrant the court in interpolating into the will a direction to make up income deficiencies out of principal or in qualifying the only direction in the will to pay the objectant, namely, " to pay out of the net income of such trust fund ". There is no basis for converting the gift of income into a demonstrative legacy of $6,000 a year.

No useful purpose would be served in commenting upon the cases cited by the objectant in support of her argument that the will authorizes deficiencies of income to be made up out of principal. It has been pointed out by the courts that each case depends upon the particular provisions of the will before the court, interpreted in the light of the surrounding circumstances. Words or phrases used in one will may bear a particular interpretation because of other provisions of the will or because of the surrounding circumstances, while the same words in different text may not admit of the same interpretation. Directions for payment of a stipulated sum " in advance " have sometimes been held the equivalent of a direction to pay out of principal. (*Matter of Mehler,* 143 Misc. 63; *Matter of Weir,* 172 Misc. 74.) It may sometimes appear that a direction to pay out of income in advance of its being earned can be effectuated only by interpreting the whole provision as a direction to pay out of principal as well as income. Here, however, the testator has not directed that income be paid in advance of its being earned. He expressly states that the objectant is to receive only net income after payment of all of the proper charges against it. His direction for payment in advance is merely that the income shall be paid " on the first day of each month in advance ", that is, that the payment for a particular month shall be made on the first day of that month and not on the first day of the succeeding month.

Moreover, he has directed his executors to make to the objectant " the accrued payment to the date of the setting up of such trust fund ", and has thus provided for payment of income up to the time of the setting up of the trust fund. Moreover, the trust assets were of such a character that when the trust was actually set up there would probably be income already accrued on the trust assets.

It is argued that the trust fund did not affect the creditor status of the objectant but was merely intended as a guaranty of payment of the debt. The objectant has not filed herein any claim as a creditor and the parties have not litigated the question of the effectiveness of her release or the· extinguishment of her claim. The issue as here formulated by the pleadings is solely the question of construction of the will.

The decision of this court in the estate tax proceeding (*Matter of Fuller,* 151 Misc. 387, *supra,* affd. 242 App. Div. 623) did not make any determination respecting the right of the objectant to be paid out of the principal of the trust. In that case the State Tax Commission contended that the claim of the objectant was not a claim or debt " ' incurred or contracted *bona fide* and for an adequate and full consideration in money or money's worth.' " (*Matter of Fuller, supra,* p. 388.) It argued that the fund for the benefit of the objectant was not deductible from the gross estate in order to ascertain the net estate left by the testator. Surrogate FOLEY held (p. 388) " that the separation agreement was a valid obligation enforcible against the husband in his lifetime and against his estate after his death "; that the obligation under the agreement was binding upon the legal representatives of the testator; that there was no contention that it was not contracted in good faith and that (p. 389) as an enforcible obligation " it was as much a proper deduction from the gross estate as any other valid debt owed by him at the time of his death." The Surrogate in referring to the payments to be made to the objectant used the term " annuity " but since there was no question as to the source of the payments, it is obvious that the term " annuity " was used by him in the general sense of a fixed annual payment rather than in the strict technical sense of a payment to be made in all events and out of both income and principal of the trust.

In the stipulation of facts it was agreed that the objectant offered in evidence, and the widow and the trustees objected to the reception of numerous documents in the estate tax file. The purpose for which these documents are offered is not stated in the stipulation or in the main argument of the parties. No particular portion of the voluminous record was called to the

attention of the court in support of any argument. When the lack of relevancy of these papers was commented upon by the widow in her brief, the objectant stated in reply only that the estate tax proceedings indicate that even after the creation of the trust fund the executors admitted and the court decided that the objectant had the status of a creditor. The fact that the objectant was a creditor at the time of decedent's death is not challenged by anyone. As heretofore pointed out, the court is not in this proceeding passing upon any claim filed by her in her status of creditor. The court rules that the only purpose stated by the objectant in offering the documents in the tax proceeding bears no relevancy to the issues here and the objection to their admission in evidence is sustained.

The objectant further requests the court to construe the will and to determine that she is entitled out of any surplus income which may hereafter be produced, to such sums as may be necessary to make up all past deficiencies in the monthly payments. The widow and the trustees, who are the only other parties interested in the trust fund, contend that the will does not manifest an intent that excess income is to be used to make up past deficiencies of income.

The question is one of intent of the testator. " Did he intend that the gift should be a charge upon the net income of the whole fund rather than upon the income from year to year." (*Matter of Hirshon,* 251 App. Div. 546, 549.) The will directs the trustees to pay out of the net income of the trust fund the sum of $500 a month to the objectant. It directs that the surplus net income be paid " from year to year " to·his widow, during her life. There is no contention on the part of the objectant that the trustees should accumulate surplus income and apply accumulated income to deficiencies in future years. Such a contention could not reasonably be made. (*Spencer* v. *Spencer,* 38 App. Div. 403.) The only contention made by the objectant is that the surplus net income of any future year should be used to the extent necessary to make up past deficiencies of income. The court holds that the testator intended the gift to be a charge upon the net income of the whole fund. (*Matter of Chauncey,* 119 N. Y. 77, *supra; Bankers Trust Co.* v. *Willis,* 248 App. Div. 753; *Spencer* v. *Spencer,* 38 App. Div. 403, *supra.*) Any surplus income in future years is to be used insofar as available to make up deficiencies of income in past years.

The objection to the failure of the trustees to pay objectant out of the principal of the trust fund is overruled.

Submit decree on notice construing the will and settling the account accordingly.